Jared SCHOLLMEYER, Respondent,

v.

Rebekah SCHOLLMEYER, Appellant.

No. WD 75384.

Missouri Court of Appeals,
Western District.

Feb. 26, 2013.

Carla G. Holste, Jefferson City, MO, for Respondent.

Clifford W. Cornell, Jefferson City, MO, for Appellant.

Before Division I: MARK D. PFEIFFER, Presiding Judge, and VICTOR C. HOWARD and ALOK AHUJA, Judges.

MARK D. PFEIFFER, Presiding Judge.

Rebekah Schollmeyer ("Mother") appeals the judgment of the Circuit Court of Cole County, Missouri ("trial court") dissolving her marriage from Jared Schollmeyer ("Father"), awarding joint legal and joint physical custody of their youngest daughter ("Daughter"), and awarding Mother child support payments of $172 per month. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## Factual and Procedural Background [1]

Mother and Father married in 2006 in Cole County. At the time of their marriage, Mother had two children from a previous relationship, and Father had one son from a previous relationship. In September of 2006, Daughter was born; she is the only biological child of both Mother and Father. In 2009, Father adopted Mother's two other children, born in November of 1996 and in September of 1998. Subsequent to the adoption, Mother's and Father's relationship soured and they separated in late October of 2010.

At the time of the separation, Mother sought an order of protection against Father. Father consented to the order of protection, and Mother and the three children of the marriage moved out of the family home. After Mother and the children moved out of the home, Father did not see or have any interaction with the adopted children, and he saw Daughter only one time for two hours between October of 2010 and April of 2011. Father's one visit with Daughter lasted two hours on Christmas Eve of 2010 and was supervised by Mother's mother. In April of 2011, Mother's and Father's attorneys agreed that Father could visit Daughter two nights per week, but Mother then refused to permit such visitation until the trial court ordered it in June of 2011. At trial, Father testified that his visits with

---

1. We view the evidence in the light most favorable to the trial court's judgment. *Villines v. Phillips*, 359 S.W.3d 44, 49 n. 3 (Mo. App. W.D.2011).

Daughter were going well, and Daughter's Guardian ad Litem ("GAL") testified that Father's and Daughter's relationship was "great." Additionally, Daughter's counselor saw Father once, had no concerns, and told Father that she did not need to see him again.

At trial, Mother requested sole legal custody and sole physical custody of all three of the children of the marriage. Mother requested supervised visitation for Father and Daughter several evenings per week, no visitation for Father with the adopted children, and child support for all three of the children born to or adopted of the marriage. Father admitted at trial that the two adopted children did not want to see him, he was not seeking visitation with the adopted children, and he joined Mother's request that she be awarded sole legal and physical custody of the adopted children. Father did, however, seek custodial rights and parenting time with Daughter.

In its judgment, the trial court dissolved Mother's and Father's marriage. The trial court awarded Mother and Father joint legal and physical custody of Daughter. Further, it is apparent from the language of the trial court's judgment that the trial court awarded sole legal and physical custody of the adopted children to Mother with no visitation for Father. The judgment states:

> The Court finds that [the adopted children] no longer desire to have a relationship with [Father]. Under the circumstances of this case, the Court finds that there would be no benefit in attempting to coerce the [adopted children] to spend time with [Father]. The facts of this case are unique and the animosity between the parties contributed heavily towards the disintegration of the relationship between [the adopted children] and [Father]. [Mother's] ac-

tions also contributed towards the breakdown of that relationship and [Mother] has affirmatively expressed her opposition to any continuation of the same. Neither party is without some fault herein, but the Court finds that, for whatever reason, there simply is no relationship between these two [adopted] children and [Father] and there are no efforts that will repair that relationship because there is no motivation on the part of either party or the [adopted] children for a relationship to exist.

In calculating child support, the trial court rejected both Mother's and Father's submitted Form 14s and completed its own Form 14. The trial court based its Form 14 calculation only on child support for Daughter. No child support was calculated for the adopted children. The trial court's judgment implies that the trial court's Form 14 gave Father credit for the $300 per month he paid to support his oldest son (not of the marriage) and gave Mother credit for the adopted children as "other children" of Mother's. The trial court's Form 14 calculation also gave Father a Line 11 adjustment for the time Daughter spent in his care. The trial court then found its own Form 14 calculation of the presumed correct child support to be unjust and inappropriate and awarded Mother child support of $172 per month. Mother appeals the trial court's judgment.

**Standard of Review**

Our standard of review in a dissolution action is governed, as in any court-tried case, by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Jenkins v. Jenkins*, 368 S.W.3d 363, 366 (Mo.App. W.D.2012). "We affirm the trial court's decision 'unless it is not supported by substantial evidence, it is against the weight of the evidence, or

it erroneously declares or applies the law.' " *Id.* at 366–67 (quoting *Selby v. Selby*, 149 S.W.3d 472, 482 (Mo.App. W.D. 2004)). We defer to the trial court's determinations with respect to credibility, and we view the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the trial court's judgment. *Querry v. Querry*, 382 S.W.3d 922, 926 (Mo.App. W.D.2012).

## Child Support for Adopted Children

◼ Mother's first two points will be addressed together as they both allege error with the trial court's calculation of child support. When formulating an award of child support, a trial court must follow the procedure set forth in *Woolridge v. Woolridge*, 915 S.W.2d 372 (Mo.App. W.D.1996). *Nelson v. Nelson*, 195 S.W.3d 502, 509 (Mo.App. W.D.2006). The two-step *Woolridge* procedure involves the trial court first arriving at the presumed correct child support amount based upon Form 14. *Woolridge*, 915 S.W.2d at 379. The court may accept one of the parties' submitted Form 14s or reject the Form 14s of both parties and calculate its own. *Id.* at 381. If the trial court calculates its own Form 14, it may make it a part of the record, or, if the trial court does not make its Form 14 worksheet part of the record, it must articulate on the record how it arrived at its Form 14 calculation. *Id.* at 382. After the trial court completes this first step, it must then "consider whether to rebut the presumed correct child support amount, as found by the court, as being unjust or inappropriate after consideration of all relevant factors." *Id.* at 379.

Mother's first two points allege that the trial court incorrectly arrived at the pre-sumed correct amount of child support on its own Form 14 because it did not calculate support for all the children of the marriage. We agree.

Section 453.090.1 [2] provides that adopted children are "held to be for every purpose the child[ren] of [their] parent or parents by adoption, as fully as though born to him or them in lawful wedlock." Therefore, adopted children are to be considered children of the marriage, *D.L.C. v. L.C.C.*, 559 S.W.2d 623, 624 (Mo.App.1977), and they are "entitled to proper support" from their parents, including "parents by adoption." § 453.090.2. Father adopted Mother's two other children after he and Mother married. Accordingly, the Form 14 presumed correct child support amount should have been calculated for all three of the children.

The trial court's judgment states that it "considered ordering child support for all three (3) children and then abating the child support for the first two (2) children," and that "[g]iven the findings about ... Mother's attitude, it appears that [Father] would be entitled to an abatement." The judgment concludes, "For simplicity's sake, the Court considers them as other children of [Mother] and does not consider any visitation credit for them as well."

However, the trial court may not simply skip the mandatory step of calculating the presumed correct amount of child support "for simplicity's sake." *See [Roberts] ex rel. [Scobee] v. Scobee*, 360 S.W.3d 336, 344 (Mo.App. W.D.2012) ("[I]t is axiomatic that before there can be a rebuttal of the [presumed correct child support amount, that amount] must, in fact, be correctly calculated.") (internal quotation marks omitted).[3]

---

2. All statutory references are to the Revised Statutes of Missouri 2000.

3. On remand, the trial court may very well end up in the same place, as far as the award of child support is concerned; however, it is imperative that the presumed correct child

Moreover, simply awarding one parent sole custody of one or more children does not relieve the non-custodial parent of all future obligations for the children's child support. *See, e.g., Villines v. Phillips*, 359 S.W.3d 44, 47 (Mo.App. W.D.2011) (awarding the mother sole custody of a child, but requiring the father to pay child support); *Gentry v. Gentry*, 347 S.W.3d 179 (Mo. App. E.D.2011) (*per curiam* order affirming an award of sole custody to a mother but requiring the father to pay support).

Thus, we conclude that the trial court erroneously declared and applied the law in its Form 14 calculation and judgment on the issue of the award of child support, and accordingly, we grant Points I and II of Mother's appeal and remand to the trial court for a child support calculation consistent with our ruling today.[4] The trial court is directed, on remand, to either accept a Form 14 submitted by one of the parties that calculates a child support award for all three children of the marriage, or it may prepare its own Form 14 calculation that calculates a child support award for all three children of the marriage. Then, after correctly calculating the presumed correct amount of child support, the trial court may consider whether the resulting amount should be rebutted as unjust or inappropriate. *Woolridge*, 915 S.W.2d at 379.[5]

### Joint Custody of Daughter

■ Mother's final point on appeal is that the trial court erred in awarding joint legal custody and joint physical custody of Daughter to Mother and Father because the trial court's finding that joint custody was in Daughter's best interests was not supported by substantial evidence.

■ In our review, we give deference to the trial court's assessment of what serves the best interests of the children, and we do not disturb the trial court's judgment on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, it misstates the law, or it misapplies the law. *Dixon v. Dixon*, 62 S.W.3d 589, 592 (Mo. App. W.D.2001). Having heard all of the evidence below, we recognize that the trial court is in a superior position "to judge the credibility, sincerity, and character of witnesses as well as other intangibles," and therefore, "we must view the evidence and any reasonable inferences drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary." *Id.* "We give even more deference to the judgment of the trial court in a custody matter than in other matters." *Suffian v. Usher*, 19 S.W.3d 130, 136 (Mo. banc 2000).

After considering the factors relating to Daughter's custody set forth in section 452.375.2, RSMo Cum.Supp.2011, the trial court determined that an award of joint legal and joint physical custody was appropriate. We conclude that the trial court's

support first be correctly calculated before the trial court may rebut that calculation.

4. Mother's third point on appeal is that the trial court erroneously failed to sufficiently articulate on the record how it arrived at its presumed correct child support calculation for Daughter's child support. Because we are remanding to the trial court for calculation of child support for all three children of the marriage, Mother's third point is moot.

5. In determining whether to rebut the presumed child support amount for all three children calculated according to Form 14, the trial court must consider whether it is Mother, or the parties jointly, who have created a situation in which visitation with the adopted children is not feasible and whether this situation can justify absolving Father, in whole or in part, of his support obligation for those children. *See, e.g., Gerlach v. Adair*, 211 S.W.3d 663, 669–70 (Mo.App. W.D.2007).

"factor findings" are supported by substantial evidence and are not against the weight of the evidence.

The first two factors under section 452.375.2 are: "(1) [t]he wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties"; and "(2) [t]he needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child." In this case, these two factors are interrelated and will be discussed together.

The trial court found that both parents desired to have substantial parenting time with Daughter but that Mother's proposed parenting plan, which awarded Father only limited supervised parenting time with Daughter, was much more restrictive of Father's parenting time than Father's was with Mother's parenting time. The trial court also found that Mother had taken steps to prevent Father from having meaningful contact with Daughter. Thus, the trial court concluded that the first two factors favored Father and that Father's proposed parenting plan better suited Daughter's interest in having frequent, continuing, and meaningful contact with both parents.

Mother argues that her parenting plan's call for limited supervised parenting time for Father is out of concern for Daughter's safety, and she recounts her allegations of Father's abusive history. Yet, Mother ignores that other witnesses testified that they had never observed Father behaving in an abusive manner, and Daughter's GAL testified that she did not see any problems between Father and Daughter and that they had a great relationship. As stated above, *Dixon* requires that we review the record in the light most favorable to the judgment, disregarding any con-

trary evidence. *Dixon*, 62 S.W.3d at 592. In so doing, we conclude that the trial court's findings with respect to the first two factors are supported by substantial evidence and are not against the weight of the evidence.

The third factor under section 452.375.2 is "[t]he interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests." The trial court found that both parents had family nearby with whom Daughter had positive relationships and that the third factor, therefore, favored neither Mother nor Father.

Mother objects to the trial court's findings with respect to this factor, pointing out that Daughter has a close relationship with her maternal grandmother and the older adopted children, who currently live with Mother. Mother also refers to an incident where Father's older son was once found kissing Daughter either on the cheek or on the lips in what may have been an inappropriate manner. However, Mother ignores that there was also testimony from Father's mother about her own strong relationship with Daughter and that she intended to help Father care for Daughter during his parenting time, even coming to Father's house early mornings to stay with Daughter after Father leaves for work. As for the incident involving Father's older son, there was also testimony that it was Father who immediately took action to make sure that there was no inappropriate contact between Daughter and her half-brother. And Daughter's GAL testified that she did not see any problem in allowing Father to have custody of Daughter, even if Father's older son would sometimes be there. Again, looking through the lens of our standard of review, we conclude that the trial court's finding with respect to this third factor is sup-

ported by substantial evidence and is not against the weight of the evidence.

The fourth factor the trial court considered is "[w]hich parent is more likely to allow the child more frequent, continuing, and meaningful contact with the other parent." § 452.375.2(4). As stated previously, there is substantial evidence in the record reflecting that Mother had made numerous—and often successful—attempts to prevent Father from having frequent, continuing, and meaningful contact with Daughter. Thus, the trial court's finding that this factor weighed in favor of Father is supported by substantial evidence and is not against the weight of the evidence.

The fifth section 452.375.2 factor is "[t]he child's adjustment to the child's home, school, and community" and, in this case, is interrelated with the eighth factor—that of the "wishes of the child as to the child's custodian." The trial court's judgment found that there was no evidence that Daughter had a greater adjustment to Mother's home than to Father's home and, likewise, concluded that "the minor child desires to spend substantial amounts of time with both parents." Thus, the trial court concluded that neither of these factors weighed in favor of one parent over the other. Mother claims that these findings by the trial court are not supported by substantial evidence and are against the weight of the evidence because Mother's mother testified that she had supervised Father's visits with Daughter during the parents' separation and that Daughter's demeanor and attitude was different after the visits than before the visits, that Daughter sometimes gets headaches after visits with Father, and that Daughter was once nauseated after a visit with Father. Once again, Mother ignores evidence to the contrary. Father testified that Daughter enjoyed visits with him and that she did not act unusual or need discipline dur-

ing the visits; the GAL testified that Daughter went freely for visits with Father; and finally, Daughter's counselor did not see any issues with Daughter's behavior when she was with Father. The trial court's finding that these factors favored neither Mother nor Father is supported by substantial evidence and is not against the weight of the evidence.

The sixth factor the trial court considered is "[t]he mental and physical health of all individuals involved, including any history of abuse of any individuals involved." § 452.375.2(6). The trial court's judgment concluded, "[T]his clearly was not a positive environment for the minor children with fault attributable to both parties." The trial court concluded that this factor favored neither parent.

Mother claims that the trial court's conclusion with respect to this factor is not supported by substantial evidence and is against the weight of the evidence because she presented evidence that Father was abusive to her and the children. Conversely, Father denied Mother's allegations in his testimony, presented witnesses who testified that they had never seen Father act violently, and the GAL and Daughter's counselor did not see any reason why Father should not have parenting time with Daughter. The trial court was unimpressed with the home environment created by both parents, and there is certainly substantial evidence to support the trial court's conclusion that this factor did not weigh in favor of either parent. Likewise, the trial court's finding is not against the weight of the evidence.

The seventh factor in section 452.375.2 is the intent of either parent to relocate the child. Neither parent has expressed any intent to relocate Daughter; thus, this factor had no bearing on the trial court's judgment.

In sum, there is no basis for reversal of the trial court's judgment awarding the parties joint legal and joint physical custody of Daughter, and Mother's point on appeal challenging this custodial ruling is denied.

### Conclusion

We affirm the trial court's judgment awarding sole legal custody and sole physical custody of the adopted children in favor of Mother and joint legal custody and joint physical custody of Daughter to both parents. However, we reverse the trial court's award of child support in its judgment and remand for a recalculation of child support consistent with our ruling today.

VICTOR C. HOWARD and ALOK AHUJA, Judges, concur.

