

# In the
# Missouri Court of Appeals
## Western District

RAYMOND LEE WILBORN,

               **Appellant,**

v.

TRACEY LEE WILBORN,

               **Respondent.**

**WD76447**

**OPINION FILED:**

**SEPTEMBER 16, 2014**

**Appeal from the Circuit Court of Randolph County, Missouri**
**The Honorable Mason Robert Gebhardt, Judge**

**Before Division Two: Victor C. Howard P.J., James E. Welsh, Anthony Rex Gabbert JJ.**

Raymond Lee Wilborn (Husband) appeals the circuit court's judgment dissolving his marriage to Tracey Lee Wilborn (Wife). Husband asserts five points on appeal. First, he alleges that the court erred and misapplied the law in classifying as marital property and awarding $19,967 which represented Husband's contribution to his railroad retirement pension during the marriage because 45 U.S.C.A. § 231m preempts state action and explicitly prohibits courts from anticipating the receipt of any such retirement benefit, forbids the court from entering any "offset" award which considers any present value or anticipated value of Husband's pension, and because the court treated Husband's railroad retirement as a private pension with an ascertainable value which could be awarded or divided and none such exists. Second, Husband charges that the court erred and misapplied the law in holding that Wife's pre-marital contributions to the

marital residence were her separate, non-marital property not subject to division because the court's reliance on the "source of funds" rule was misplaced. Third, Husband argues that the court abused its discretion and erroneously applied the law in entering a parenting plan because the court's provisions regarding summer parenting time were vague, indefinite, and incapable of enforcement. Fourth, Husband contends that the court abused its discretion and erroneously applied the law in entering its parenting time schedule for parenting time during the school year. Fifth, Husband alleges that the court erroneously applied the law in awarding the federal dependency tax exemptions because it did not follow federal guidelines and order the parents to complete the necessary IRS form to relinquish rights to the exemption. We affirm with modifications.

Husband and Wife were married on March 7, 2003, and three children were born of the marriage. Husband filed a petition to dissolve the marriage on September 7, 2011, and Wife filed an answer and counter-petition on October 6, 2011. Trial was held August 24, 2012, and the court entered an order and judgment dissolving the marriage on October 15, 2012. Husband filed a motion to set aside the judgment on November 14, 2012, which was sustained by the court on January 16, 2013. The court entered a new dissolution judgment on February 7, 2013. Therein the court dissolved the marriage, divided the marital property and debt, and established a parenting plan. Husband appeals that judgment.

"Our standard of review in a dissolution action is governed, as in any court-tried case, by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the court's decision unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences

2

in the light most favorable to the court's judgment. *Id.* The party challenging the judgment has the burden of proving error. *Beckham v. Beckham*, 41 S.W.3d 908, 911 (Mo. App. 2001). We apply *de novo* review to questions of law and give no deference to the trial court's conclusions regarding such questions. *Pearson v. Koster*, 367 S.W.3d 36, 43-44 (Mo. banc 2012).

In Husband's first point on appeal, he argues that the circuit court erred and misapplied the law in classifying as marital property and awarding $19,967 which represented Husband's contribution to his railroad retirement pension during the marriage because 45 U.S.C.A. § 231m, as explicated by *Hisquierdo v. Hisquierdo*, 439 U.S. 572 (1979), preempts state action and explicitly prohibits courts from anticipating the receipt of any such retirement benefit. Husband contends that federal law also forbids the court from entering any "offset" award which considers any present or anticipated value of Husband's railroad pension. Husband argues that the court should not have treated Husband's railroad retirement as if it were a private pension with an ascertainable value which could be awarded or divided because none such exists. We find no error.

The record reflects that Wife listed her IRA held by City Bank and Trust as marital property in her Statement of Marital and Non-Marital Assets and Debts (Statement). She listed its present fair market value as $56,426 and recommended that the IRA be awarded to her.[1] Wife also listed Husband's railroad pension as marital property in her Statement, but put a question mark by its present fair market value and gave no recommendation as to whom it should be awarded. Husband did not list his railroad pension in his Statement, however Husband testified with regard to his pension on direct examination. Husband testified that he commenced employment with the railroad in June of 1994. He testified that, after he worked seven and a half

_____

[1]In Wife's Exhibit 9 she estimated the marital contribution of this amount to be $15,000.

years with the railroad, his social security earnings transferred over to the railroad retirement system. He testified that he will not be eligible for retirement with the railroad for another 17 years. He testified that, if he quit working for the railroad tomorrow, he would not be eligible to receive "Tier II" benefits but would draw benefits under "Tier I" which are equivalent to what he would receive with social security and subject to social security guidelines. Husband stipulated that $19,967 was contributed to his railroad pension during the marriage. The court, in its ultimate judgment, considered this $19,967 amount in its overall division of marital property and awarded Husband the entire sum of the "marital contributions" of his railroad retirement.[2]

Husband argues that the Railroad Retirement Act of 1974, as codified at 45 U.S.C.A. § 231 and interpreted by *Hisquierdo*, prohibited the court from considering Husband's railroad pension as property subject to division in the dissolution. We disagree. *Hisquierdo* was penned in 1979. Therein the United States Supreme Court overturned a decision by the California Supreme Court which had concluded that railroad retirement benefits were community property subject to consideration in a marital dissolution. *Hisquierdo*, 439 U.S. at 580. The high Court disagreed with the California decision based on the following language in 45 U.S.C.A. § 231m:

> Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated . . . ."

---

[2]Wife introduced Exhibit 9 at trial as a proposed division of marital property and debt which the court found in its judgment to be just and reasonable. Exhibit 9 listed Husband's marital retirement contributions to be $19,967 and Wife's marital retirement contributions to be $15,000. Although Husband objected that the value of a motorcycle was $300, and not $600 as noted in Exhibit 9, Husband made no other objections to Exhibit 9.

4

439 U.S. at 576. The *Hisquierdo* Court concluded that, by enacting 45 U.S.C.A. § 231m, Congress purposefully disqualified railroad retirement benefits from being characterized as community property subject to division in a dissolution. 439 U.S. at 585.

This portion of the Railroad Retirement Act of 1974, however, was significantly amended in 1983. While 45 U.S.C.A. § 231m(a) continues to state that "no annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated," this language is now preceded by "[e]xcept as provided in subsection (b) of this section." Subsection (b) states:

> This section shall not operate to prohibit the characterization or treatment of that portion of an annuity under this subchapter . . . as community property for the purposes of, or property subject to, distribution in accordance with a court decree of divorce, annulment, or legal separation or the terms of any court-approved property settlement incident to any such court decree.

45 U.S.C.A. § 231m(b)(2). This new provision has been construed in other jurisdictions and by the Railroad Retirement Board to mean that Tier II benefits may now be treated as marital property subject to division. An Ohio appeals court stated:

> Following the Supreme Court's decision in *Hisquierdo*, Congress amended Section 231m. In doing so, it removed the shield that the section had provided to the treatment of certain railroad retirement benefits as marital property. Section 231m(b)(2) now specifically provides that federal law does not prohibit treatment of certain pension benefits payable based upon employment in the railroad industry, including Tier II benefits, as marital property. Significantly, however, Congress did not change the law regarding Tier I benefits.[3] The Supreme Court's conclusion in *Hisquierdo* that Tier I benefits may not be treated as marital property subject to division remains the law.

---

[3]"Tier I is the railroad retirement equivalent of social security wages and benefit amounts." http://www.rrb.gov/AandT/ERI/Part1/chapter 5.asp; *See also Hisquierdo*, 439 U.S. at 574-575. "Tier II is comparable to a private pension." *Id*. "The second tier is based on railroad retirement credits only, and may be compared to the retirement benefits paid over and above social security benefits to workers in other industries." http://www.rrb.gov/pdf/opa/handbook.pdf; p.18.

*Tarbet v. Tarbet*, 647 N.E.2d 254, 256 (Ohio App., 1994); *See also Martin v. Martin*, 385 Pa.Super. 554, 561 n.1, 561 A.2d 1231, 1235 n1 (1989); *Olson v. Olson*, 445 N.W.2d 1, 7 (N.D., 1989); *Elkins v. Elkins*, 854 S.W.2d 787, 789 (Ky. App. 1993); *Mahoney v. Mahoney*, 681 N.E.2d 852, 855 n.7 (Mass., 1997); *Thibodeaux v. Thibodeaux*, 712 So.2d 1024, 1027 n.3 (La.App. 1 Cir., 1998); *et al*.

Consequently, 45 U.S.C.A. § 231m and *Hisquierdo* would only exempt Husband's $19,967 in railroad retirement contributions from being considered marital property in the dissolution if these contributions represent Tier I, rather than Tier II, benefits. Here, Husband testified that he vested in his railroad retirement benefits approximately seven and a half years after commencing employment.[4] This vesting allowed Husband to begin accumulating benefits under Tier II. Husband and Wife married approximately nine years after Husband commenced employment with the railroad and after Husband began accumulating Tier II benefits. Therefore, viewing the evidence in the light most favorable to the judgment, we presume that all $19,967 of the railroad retirement contributions made during the marriage represent divisible Tier II benefits. To the extent that Husband argues otherwise, we note that Husband stipulated at trial that $19,967 was contributed during the marriage to the railroad pension and Husband never argued that any part of the $19,967 represented Tier I benefits or that *Hisquierdo* prevented the

---

[4]As the Railroad Retirement and Survivor's Improvement Act of 2001 changed the vesting requirements from ten years to five years, with 1995 being the start date for five-year vesting eligibility, this would explain Husband's testimony that he vested after seven and a half years of employment. With Husband being hired in 1994, Husband would have served seven and a half years with the railroad at the time the provisions of the 2001 Act went into effect. *See* 45 U.S.C.A. § 231(a).

6

$19,967 from being characterized as marital property subject to division.[5] Although he argued that he would only receive the equivalent of social security benefits and not Tier II benefits if he chose to retire early, he presented no evidence that the $19,967 did not represent Tier II benefits.

Notably, Husband conceded the divisibility of his Tier II benefits in Petitioner's Exhibit 5. After Husband testified regarding his railroad retirement benefits, he introduced Exhibit 5 "for the purposes of the court's explanation or elucidation." Husband's Exhibit 5 consists of Railroad Retirement Board information and includes a page titled "Partition of Annuities by Court Decree." This document's stated purpose is to "assist individuals in partitioning Railroad Retirement Act annuities in connection with certain court related property settlements." The document cites *Hisquierdo* and states that, although the United States Supreme Court had previously prohibited a court from awarding a spouse a property interest in any benefits, "Public Law 98-76 amended section 14 with respect to benefits payable" and "[t]he RRB will honor a decree of divorce, legal separation or annulment (or a court-approved property settlement incident to such decree) which complies with these regulations." Also part of Husband's Exhibit 5 is a "Statement of Railroad Employee's Actual or Estimated Railroad Retirement Benefits." This document states that it "is furnished pursuant to 20 CFR Part 295 for use in connection with a state court action for divorce, legal separation, or annulment involving this employee." It provides an "estimate of the employee's current monthly benefit based upon railroad

---

[5]Husband testified that Wife could not "access" his railroad pension because it was similar to social security in that the couple must have been married for ten consecutive years in order for Wife to be eligible. This "access" that Husband references is with regard to spousal annuities that may be payable to a divorced spouse of a railroad employee. *See* http://www.rrb.gov/opa/pr/pr0702.asp (2007 publication titled "Railroad Retirement Eligibility Requirements Eased for Divorced Spouses.") Divorced spouses are eligible to receive a personal annuity if the marriage lasted at least 10 years and other statutory requirements are met. *Id.* These are annuities that a divorced spouse may be separately entitled to over and above the employee's own annuity. *Id.* These spousal annuities are different from partition payments that the court may require a spouse to pay pursuant to a division of the Tier II portion of an employee's annuity that the court has characterized as property subject to distribution. *Id.*

7

employment through December 31, 2010, assuming the employee were now retired and entitled to payment of benefits." This document expressly identifies $559.95 of Husband's present estimated monthly benefit of $2,489.95 as Tier II and "divisible." Thus, Husband's own trial evidence disproves Husband's position on appeal. Husband is bound by the record, as are we. *See Dressel v. Dressel*, 221 S.W.3d 475, 477 (Mo. App. 2007). We conclude that the circuit court did not err or misapply the law in considering Husband's railroad pension contributions of $19,967 during the marriage in the court's overall distribution of property. Point one is denied.

In Husband's second point on appeal, Husband contends that the court erred and misapplied the law in holding that Wife's pre-marital contributions to the marital residence were her separate, non-marital property not subject to division because the court's reliance on the "source of funds" rule was misplaced. Husband argues that the court erred in holding that, pursuant to *Hill v. Hill*, 747 S.W.2d 718 (Mo. App. 1988), Wife was entitled to a credit for $9,539.33 in pre-marital contributions that Wife made to the marital residence. Wife argues that Husband failed to preserve this argument for appellate review because Husband failed to dispute *Hill's* applicability with the trial court and in fact conceded *Hill's* applicability at trial. We agree.

At trial, Husband conceded the applicability of *Hill* but disagreed with Wife's calculations with regard to her pre-marital contributions to the marital real estate. Wife contended, pursuant to *Hill*, that her pre-marital interest was $9,539.33. Husband contended, pursuant to *Hill*, that Wife's pre-marital interest was $6,542.68. On appeal, Husband contends that *Hill* was erroneously relied upon by the court and that Wife actually had no pre-marital interest in the property because any pre-marital interest she might have had was transmuted when the couple jointly refinanced and titled the property. *See Selby v. Selby*, 149 S.W.3d 472, 491 (Mo. App. 2004). Husband argues that Wife, therefore, had the burden of proving by clear and

8

convincing evidence at trial that she did not intend to gift her pre-marital interest to Husband and Wife failed to meet that burden. *Id.*

Husband's argument fails for two reasons. First, by conceding applicability of the source of funds rule with regard to the marital real estate at trial, Husband waived review of his present claim on appeal.[6] We will not convict the trial court of error on an issue never presented for its consideration. *Heck v. Heck*, 318 S.W.3d 760, 767 (Mo. App. 2010). Further, by agreeing to *Hill's* applicability at trial, Husband conceded at trial that Wife sufficiently rebutted the presumption of transmutation by clear and convincing evidence, or could have rebutted the presumption absent the concession. Point two is denied.

In Husband's third point on appeal, he argues that the circuit court abused its discretion and erroneously applied the law in entering a parenting plan because the court's provisions regarding summer parenting time were vague, indefinite and incapable of enforcement and in violation of Section 452.375.9 and Section 452.310, RSMo 2000, in that the parenting plan does not specify what day weekend parenting time begins in the summer or which parent will have the children during the first summer weekend. We find no error.

On appeal, Husband and Wife both agree that the word "Friday" should have been inserted just before "4:00 p.m." in the sentence in the parenting plan that designates weekend summer parenting time. In light of the fact that, when addressing "alternate weekends" during the school year, the court started the weekend at "4:00 p.m. on Friday," we find Husband and Wife's agreement that the court intended for the summer weekends to begin on Friday to be logical. Likewise, it is logical to assume that, because the parenting plan alternates parenting time weekends during the school year, the parties would continue to alternate weekends in the

---

[6]We note that Husband also failed to assert this claim in his motion to set aside the court's judgment.

9

summer on that same schedule. Because the plan references summers to be "when the children are not in school," it would be consistent for the summer parenting schedule to begin the first weekend the children are not in school. As neither party disputes these conclusions, we find that the court did not abuse its discretion or erroneously apply the law in entering the parenting plan because the court's provisions are not so vague and indefinite that they are incapable of enforcement. Nevertheless, as Husband desires written clarification, we modify the court's judgment pursuant to Rule 84.14 to provide that the summer weekend schedule continue on the same schedule as the weekend parenting times throughout the rest of the year and we insert "Friday" before "4:00 p.m." in the sentence in the parenting plan that designates weekend summer parenting time. Point three is denied.

In Husband's fourth point on appeal, Husband contends that the circuit court abused its discretion and erroneously applied the law in entering its "physical custody" schedule for parenting time during the school year. Husband argues that it is not in the best interest of the children to have no overnight parenting time with Husband during weekdays during the school year and Husband had made adequate provisions to care for the children and ensure their delivery to school. Husband also argues that the court failed to consider all relevant factors in determining the best interests of the minor children prior to issuing a judgment as required by Section 452.375.2, RSMo 2000, including, but not limited to, which parent is most likely to allow the child frequent and meaningfully contact with the other parent and any history of abuse. We find no error.

As previously noted, "[w]e view the evidence and all permissible inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Querry v. Querry*, 382 S.W.3d 922, 926 (Mo. App. 2012). An abuse of discretion occurs when the court's

10

"ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014) (internal citations and quotations omitted.) Here, Husband argues that the court abused its discretion in failing to award any overnight parenting time to Husband during the school year except as it falls on alternating weekends.

The court found in its judgment that, after weighing the factors enumerated in Section 452.375.2, each of the factors was neutral with the exception of the factor set forth in Section 452.375.2(5) which regards "the child's adjustment to the child's home, school and community." The court found that there was significant evidence presented that Husband is required to leave for work early each morning and well before the children are scheduled to leave for school, which would require that some third party or other arrangements be made to prepare the children for school if the children were to spend school nights overnight with Husband during the school year. The court found that Husband is also required to be "on call" and occasionally is required to go to work late at night on weeknights during the school year. The court found that Wife has historically been the parent who has prepared the children for school and has delivered them to school each day. The court found that Wife is employed by the school and that her schedule is ideally suited to prepare the children for school and deliver the children to school during the school year. Consequently, the court awarded Husband parenting time on Tuesdays and Thursdays from 4:00 p.m. until 8:00 p.m. each week during the school year, but no overnight visitations Monday through Thursday during the school year.

Upon review of the record, we conclude that the court did not abuse its discretion in awarding parenting time in this manner. The record reflects that the court carefully and

11

deliberately considered the matter and the court's determination was not arbitrary, unreasonable, or illogical given the circumstances.

Husband also argues that, after the court set aside its initial judgment and prior to entering a new judgment "a serious incident of domestic violence from Wife directed towards Husband occurred," and, therefore, the court erred in failing to consider this evidence and its impact on the parent most likely to facilitate frequent and meaningful contact with the other parent. However, although Husband filed a Motion to Reopen Evidence alleging "an episode of domestic violence" and the court scheduled the motion for hearing on October 12, 2012, Husband filed an Emergency Motion for Continuance on October 11, 2012, which was denied by the court. Husband's Motion to Reopen Evidence was overruled by the court on October 12, 2012, and there is no indication in the record that evidence was ever heard on the matter. No supporting affidavits or documentation was filed with Husband's motion. Husband does not allege error with the court's ruling on that motion, but suggests that the court abused its discretion in adopting its parenting plan merely because these allegations existed. This, however, would suggest that Husband's motion was self-proving. It was not. *Rawlings v. Rawlings*, 330 S.W.3d 594, 595 (Mo. App. 2011). Husband had the burden of proving the allegations in his post-trial motion and he, apparently, did not. *Id.* As the court had no evidence before it regarding these domestic violence allegations, it would be impossible for us to conclude that the court abused its discretion in weighing or failing to consider this evidence. Point four is denied.

In Husband's fifth point on appeal, he contends that the court erroneously applied the law in awarding the federal dependency tax exemptions because it did not follow federal guidelines under the IRS tax code. Husband charges that the court failed to order the parents to complete

the necessary IRS form to relinquish the parental right to the federal tax exemption and,

therefore, the court's order is not enforceable.

We discussed in *Nevins v. Green*, 317 S.W.3d 691, 698-99 (Mo. App. 2010):

> For federal tax purposes, the parent who has custody for the greater portion of the calendar year is referred to as the 'custodial parent.' 26 U.S.C. § 152(e)(4)(A). The other parent is referred to as the 'noncustodial parent.' *Id.* at § 152(e)(4)(B). . . . Under federal law, the custodial parent will receive the exemption. *Simon-Harris v. Harris*, 138 S.W.3d 170, 182 (Mo.App. W.D.2004). An exception to the general rule provides that the noncustodial parent may claim the child as a dependent if the custodial parent signs a written declaration that he or she will not claim the child as a dependent for the taxable year, and the noncustodial parent attaches the declaration to his or her return for the taxable year. 26 U.S.C. § 152(e)(2)(A)-(B).

> Missouri courts have held that, based on the language of § 152(e), 'the trial court does not have the authority to merely order that the non-custodial parent get the dependency exemption.' *See, e.g.*, *Simon-Harris*, 138 S.W.3d at 183. To effectuate the allocation of the tax exemption to Father, the noncustodial parent, the trial court is required to order Mother, the custodial parent, to sign the declaration described in § 152(e)[.]

This point may be disposed of by this court amending the court's judgment pursuant to

Rule 84.14 which allows this court to "give such judgment as the court ought to give" and finally

dispose of the case. We, therefore, modify the trial court's judgment to include the following

language:

> To effectuate allocation of the dependency tax exemption as set forth in this judgment, Wife must sign a written declaration that she will not claim the child(ren) for the taxable year she is not authorized by this judgment to claim the child(ren). This declaration, presently IRS Form 8332, must be signed on or before January 31 of the year immediately following the year for which taxes are to be filed. Execution of the declaration is contingent upon Wife's receipt of Husband's court ordered child support payments.

We conclude, therefore, that the circuit court did not err and misapply the law in

classifying as marital property and considering in its total distribution $19,967 which represented

Husband's contribution to his railroad retirement pension during the marriage. The record

13

reflects that the $19,967 in contributions are subject to division pursuant to 45 U.S.C.A. § 231m(b). Second, we conclude that Husband failed to preserve and, therefore, waived for appellate review his claim that the court erred and misapplied the law in holding that Wife's pre-marital contributions to the marital residence were her separate, non-marital property. Third, we conclude that the court did not abuse its discretion or erroneously apply the law with regard to the court's provisions for summer parenting time in the parenting plan. Although the court's order could have been more explicit, the court's intent is apparent from the context of the parenting plan and, therefore, the court's provisions are not so vague and indefinite that they are incapable of enforcement. Fourth, we conclude that the court did not abuse its discretion or erroneously apply the law in entering its parenting time schedule for parenting time during the school year. The record reflects that the court carefully and deliberately considered the matter and the court's determination was not arbitrary, unreasonable, or illogical given the circumstances. Finally, we modify the court's judgment as set forth above and affirm the circuit court's judgment with these modifications.

_____

Anthony Rex Gabbert, Judge

All concur.