

# In the
# Missouri Court of Appeals
## Western District

SHIRLEY JONES,

          **Appellant,**

v.

RANDY JONES and CASSANDRA A.
CORDES-PATTON,

          **Respondents.**

WD78533

OPINION FILED:

August 23, 2016

**Appeal from the Circuit Court of Pettis County, Missouri
The Honorable Robert M. Liston, Judge**

**Before Division Four: Alok Ahuja, P.J., Anthony Rex Gabbert, J. James F. Kanatzar, Sp. J.**

Shirley A. Jones (Shirley) appeals the circuit court's judgment in favor of Randy E. Jones (Randy) and Cassandra Cordes-Patton (Cassandra) on Shirley's First Amended Motion to Set Aside Conveyance of real property. Shirley asserts three points on appeal. First, she contends that the circuit court erred in declaring that a one-year statute of limitation barred her Section 454.525, RSMo 2000, action to set aside a fraudulent conveyance, arguing that Section 454.525 does not time-bar a claim as long as the person who took without consideration still holds title to the conveyed property. Second, she contends that the circuit court erred in finding that Cassandra recorded the Indiana property deed after the decision in her Pike County dissolution, in that there is no evidence supporting that finding and the weight of the evidence demonstrates that the recordation took place more than two weeks prior to the dissolution judgment such that

the conveyance was not done to effectuate the judgment and did not convert it to one with consideration. Third, she asserts that the circuit court erred in basing its judgment on a theory that consideration attached to Randy's transfer of the Indiana deed to Cassandra by subsequent acts because this theory was not raised in Cassandra's pleadings and was not tried by consent. We reverse and remand.

Evidence adduced at trial, viewed in the light most favorable to the judgment, was that Shirley and Randy divorced in 1982. Two children were born of the marriage and Randy was ordered to pay Shirley child support. Sometime prior to 2000, Randy suffered a work injury and received a monetary settlement for that injury. Randy used proceeds from that settlement to pay off a lakefront plot of land that he had purchased in Princeton, Indiana. Around that same time, Randy was nearly $40,000 in arrears on his child support obligation to Shirley.

In 1998, Randy and future wife, Cassandra, began living together. In 2001, Randy prepared, executed, and delivered a deed for the Indiana property to Cassandra. He conveyed it to Cassandra for no consideration. Cassandra did not record the deed to the property at the time Randy conveyed it to her. Cassandra and Randy were married in October of 2004. They had no children together. They divorced in October of 2009. Cassandra recorded the deed to the Indiana property on October 21, 2009, the day following the close of Randy and Cassandra's dissolution trial.

Randy testified at the trial on Shirley's fraud claim that he conveyed the Indiana property to Cassandra to put it beyond Shirley's reach for collection of child support and that Cassandra was aware of this purpose. He also testified that he transferred it to Cassandra to hold for *his* children in the event something happened to him. Cassandra testified that she had two children of her own, not fathered by Randy, but to whom Randy was a father figure. She testified that

2

Randy told her that the reason he was granting her the land in Indiana was to ensure that she and *her* children were provided for upon his demise, and that *her* children had an inheritance upon *her* demise.

Prior to Randy and Cassandra's divorce in October of 2009, Randy and Shirley rekindled their relationship and Randy moved into Shirley's home in the spring of 2008. Randy and Shirley were still residing together in 2011 when Shirley moved to set aside Randy's conveyance of the Indiana property, and also in August of 2014 at the time of trial.

In Randy and Cassandra's dissolution judgment, the Pike County Circuit Court awarded the Indiana land to Cassandra as non-marital property and ordered Randy to refinance any loans he had against the property. Randy appealed the Pike County Court's judgment on several grounds, including alleging that the court had erred in awarding the Indiana property to Cassandra as her non-marital property. The Eastern District of this court upheld the circuit court's dissolution judgment. *Jones v. Jones*, 320 S.W.3d 236 (2010). Based on the memorandum issued by the Eastern District in that case, it appears that Randy argued at trial and on appeal that, while he did sign the 2001 deed, he never intended for the Indiana property to belong to Cassandra. He argued that his intent in creating the deed was so that his children would receive the land if something should happen to him. He denied, however, that the transfer was to avoid child support. At the dissolution trial he was asked directly: "Isn't the truth Mr. Jones, you owed a bunch of child support and you were afraid your ex-wife was going to come after your assets?" Randy responded: "No, I wasn't afraid my ex-wife would come after my assets."

The Eastern District found that Randy intended for the property to be Cassandra's upon transfer of the deed and expressly rejected Randy's assertion that he deeded the property to

3

Cassandra because he wanted to ensure that his children received the land if something should happen to him. The court stated that "[h]is after-the fact assertions that he did not intend to convey his property are not persuasive" and, with regard to the claim that the property was to be saved for his children found that the "assertion is not supported by the face of the deed or by any further evidence or documentation." The Eastern District noted that, prior to his marriage to Cassandra, Randy titled several items of personal property in Cassandra's name, including a boat, motorcycle, jet ski, truck, and trailer. However, Randy had "many other items" of personal property purchased prior to the marriage that he titled in his own name. These included a 2002 Dutch mobile home located on the Indiana property, a 1987 Runabout speedboat, a 1988 Ford RII truck, a 1993 DD 2-wheel trailer, and a 1999 New Holland skid loader.

On February 17, 2011, Shirley filed an Application for Writ of *Scire Facias* to Revive Judgment, Motion to Declare Support Arrearage and Statutory Interest, and Motion to Set Aside Conveyance. The circuit court ultimately entered a Judgment Declaring Arrearage and Reviving Judgment by Writ of *Scire Facias*, finding Randy to owe Shirley support arrearage in the amount of $9,723.73 and statutory interest in the amount of $31,550.75.

On May 16, 2014, Shirley filed a first amended motion to set aside conveyance. In Shirley's "First Amended Motion to Set Aside Conveyance to Defeat Judgment Creditor," Shirley alleged that, in 2001, at a time when Randy was nearly $40,000 in arrears in his payment of support, Randy conveyed by warranty deed his sole interest in the Indiana property to Cassandra "for the purpose of hindering, delaying, obstructing, defeating and or defrauding the rights of the petitioner, as a judgment creditor." Shirley alleged that Cassandra was aware of Randy's "purpose and intention at the time of the said conveyance, and participated in it." Shirley alleged that no adequate consideration was ever exchanged for the property and that

4

Randy retained possession of the real estate thereafter, continuing to pay real estate taxes assessed against it. Shirley alleged that, at the time of the conveyance, it was a transfer of all or nearly all of Randy's property and rendered him virtually insolvent. Shirley further alleged that, Cassandra did not record the warranty deed, but secreted it away and Shirley only learned of it in December of 2010. Shirley alleged that, Randy admitted under oath that he made the conveyance solely to defeat her rights under the judgment for support, and in anticipation of further litigation or collection proceedings for payment thereof, and such sworn testimony should estop his asserting a rebuttal of the badges of fraud therein alleged. Shirley prayed that the court "set aside the conveyance of the said real estate from [Randy to Cassandra], and to declare it subject to [Shirley's] execution for support, in accordance with Sections 428.010 and 452.140 R.S.Mo. (2000), as well as other statutory and common law authority . . . ."

In answer to Shirley's allegations, Cassandra, among other things, denied that the conveyance was made for the purpose of defrauding Shirley and set forth affirmative defenses to Shirley's claim. Specifically, Cassandra pled that Shirley's motion to set aside the conveyance was brought pursuant to Chapter 428 and, that, pursuant to Chapter 428, Shirley's claims were barred by the statute of limitations. Further, that Shirley's claims were barred by laches due to an unreasonable and prejudicial delay in bringing her motion.

On August 18, 2014, and December 3, 2014, trial was held regarding Shirley's motion to set aside Randy's conveyance of the Indiana property. Shirley alleged at trial that Section 454.525 was also applicable to her claim, and there is no contention on appeal that the applicability of Section 454.525 was not tried by consent.[1] On February 2, 2015, the court issued

---

[1]Neither Cassandra nor Randy filed a Respondent's brief in this matter.

5

a judgment denying Shirley's motion to set aside the conveyance. The court found Section 454.525 inapplicable to Shirley's claim, reasoning that the conveyance was only voidable as long as a tenancy by the entireties existed, and because Randy and Cassandra were not married at the time of the deed transfer, no tenancy by the entireties existed. The court found Shirley's claim time barred by the portion of Section 428.049 that provides that a claim pursuant to Section 428.024 1(1) is extinguished unless the action is brought within four years after the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant. The court found that, pursuant to Section 442.390, RSMo 2000, Shirley was put on notice of the transfer when Cassandra recorded the deed to the property on October 21, 2009.[2] The court, noting that Shirley and Randy had resumed a relationship prior to Cassandra and Randy's dissolution and that Shirley was managing Randy's finances, expressly disbelieved Shirley's testimony that she only learned of the deed transfer when the Eastern District rendered its decision in Randy's Pike County appeal. The court further found that, due to Shirley's involvement in Randy's finances, Shirley "absolutely could have obtained this knowledge prior to the date she testified she became aware of it." The court concluded that Shirley's claim was time barred by not being filed within one year of when Shirley knew or should have known of the transfer. The court also concluded that Cassandra filed the deed after and to effectuate the Pike County dissolution judgment and that no badges of fraud existed at the time she recorded the deed. Shirley appeals.

---

[2]Section 442.390 states: "Every such instrument in writing, certified and recorded in the manner herein prescribed shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice."

Our standard of review is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo.App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* at 123. We review questions of statutory interpretation *de novo*. *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014). Our "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Id.*

In Shirley's first point on appeal, she contends that the circuit court erred in declaring that a one-year statute of limitation barred her Section 454.525 action to set aside a fraudulent conveyance, arguing that Section 454.525 does not time-bar a claim as long as the person who took without consideration still holds title to the conveyed property. We agree.[3]

The circuit court found Section 454.525 inapplicable to Shirley's claim, reasoning that the statute makes the conveyance voidable only so long as an entireties interest exists, and because Randy and Cassandra were not married when the deed was transferred, there was no tenancy by the entireties. We find that a plain reading of the statute refutes this interpretation. Section 454.525.2 states:

> Any conveyance of real or personal property made by the obligor, including conveyances made by the obligor to himself and his spouse as tenants by the entirety, for the purpose and with the intent to delay, hinder or defraud the person to whom the support obligation is owed shall be voidable, as long as the

---

[3]Shirley argues in the argument portion of her first point relied on that, even if Section 454.525 is inapplicable, Section 428.034 defines "transfer" pursuant to Chapter 428 and, therefore, the application of this definition to Section 428.049 and the court's findings require that a four-year statute of limitations be applied, not a one-year statute of limitations as the court found. As we find that the court erred in finding Section 454.525 and the time constraints therein inapplicable to Shirley's claim, we need not address this contention.

7

tenancy by the entirety exists and until a good faith purchaser for value gains title to the property.

A plain reading of the statute is that *any* conveyance made by an obligor with the intent to avoid collection of support is voidable. The language in the statute *including* tenancy by the entireties does not modify or limit "any conveyance" from being voidable under the statute but, rather, expresses that one cannot avoid the reach of the statute by, in essence, retaining some title to the property while simultaneously attempting to put the property beyond reach of personal creditors by creating a tenancy by the entirety with one's spouse.

> Under Missouri law, '[t]he distinctive characteristic of an estate by the entirety is that it is deemed to be owned by a single entity, the marital community.' *In re Estate of Blair*, 317 S.W.3d 84, 89 (Mo.App.2010) (citing *Stewart v. Shelton*, 356 Mo. 258, 201 S.W.2d 395, 398 (1947)). 'Where land is held by the entirety, the husband and wife hold it not as separate individuals but as one person[.]' *Johnson v. Cook*, 167 S.W.3d 258, 263 n. 4 (Mo.App.2005). Because the estate is deemed to be "owned by a single entity, 'neither spouse has any ... interest which may be conveyed, encumbered or devised by his or her sole act.'" *Bakewell*, 396 S.W.3d at 412 (citations omitted). '[A] tenancy by the entirety may be terminated or severed only by joint and mutual action on the part of husband and wife.' *Id.*

*Jennings v. Atkinson*, 456 S.W.3d 461, 465-466 (Mo. App. 2014).

The statute is clear that *any* conveyance, *including* one creating a tenancy by the entirety, is voidable under the statute. Therefore, the circuit court erred in concluding that Shirley's claim was not applicable to Section 454.525 and subject to the time constraints set forth therein. Section 454.525 provides that a fraudulent conveyance is voidable up until a good faith purchaser for value retains title to the property. As Cassandra, the original grantee of the property, continued to hold title when Shirley filed her petition to set the transfer aside, Shirley's claim was not time barred. Point one on appeal is granted.[4]

---

[4]Because Shirley disputes additional findings by the circuit court in her second point which may prove relevant on remand, we review Shirley's second point on appeal.

8

In Shirley's second point on appeal she contends that the circuit court erred in finding that Cassandra recorded the Indiana property deed after the decision in her Pike County dissolution, in that there is no evidence supporting that finding, the weight of the evidence demonstrates that the recordation took place more than two weeks prior to the dissolution judgment, such that the conveyance was not done to effectuate the judgment and did not convert it to one with consideration.

We agree that the record reflects that the deed to the Indiana property was recorded prior to, and not after, Randy and Cassandra's dissolution judgment and find that additional material factual findings were also against the weight of the evidence.

At trial, Shirley asked the court to take judicial notice of the decision rendered by our Eastern District in Randy's appeal of the Pike County dissolution judgment. In that decision, the Eastern District affirmed the Pike County Circuit Court's determination that the Indiana property was Cassandra's *non-marital* property. The Eastern District found that Randy intended for the property to be Cassandra's upon transfer of the deed and expressly rejected Randy's assertion that he deeded the property to Cassandra because he wanted to ensure that his children received the land if something happened to him. The court stated that "[h]is after-the fact assertions that he did not intend to convey his property are not persuasive." With regard to Randy's claim that the purpose of the transfer was for Cassandra to save the property for his children, the Eastern District found the assertion "not supported by the face of the deed or by any further evidence or documentation." At his dissolution trial, Randy denied transferring the property to avoid attachment for child support collection.

Here, the trial court found that the Pike County Circuit Court deemed the Indiana property *marital* and divided it accordingly. This conclusion is inaccurate and against the weight of the evidence. Pike County's conclusion that the property was *non-marital* was one reason for Randy's appeal of the Pike County dissolution judgment.

The trial court also found, after discussing that both Randy and Shirley "would have the Court believe that the deed was executed and delivered for the purpose of avoiding the child support" and noting Cassandra's testimony "that the deed was given to her in order to insure that *her* children were provided for in the event of [Randy's] untimely demise," that "[t]his may be an indirect way of saying the same thing [- Randy] may have believed the deed property would make the property available to *the* children rather than to execution of the child support award by Petitioner." This extrapolation is contrary to the Eastern District's express conclusion that Randy did not deed the land to Cassandra to be held for his children, and is against the weight of the evidence at this trial because it erroneously intertwines Cassandra's trial testimony that the transfer was to benefit *her* children with Randy's trial testimony that the transfer was to benefit *his* children.

Because Shirley was not a party to Randy and Cassandra's dissolution proceeding, the findings made by the Pike County dissolution court, and by the Eastern District on appeal, do not bind Shirley in this proceeding. Nevertheless, without further explanation reconciling the trial court's own factual determinations with conflicting findings by our Eastern District that Shirley requested the trial court to take judicial notice of, we are not confident that the trial court took the Eastern District's findings into consideration prior to issuing its judgment in this case.

We also find an overall lack of specificity in the judgment regarding the material issue of fraudulent intent. Although the court stated in an April 4, 2015, docket entry denying Shirley's

10

motion to amend the judgment and motion for new trial that "[t]he court has previously found and does believe that an instrument of transfer was delivered by Respondent to co-Respondent with the intent to defraud the Petitioner of the capacity to collect her child support obligation and the delivery was made without consideration," the court's written judgment makes no clear finding of fraudulent intent when the deed was transferred. The judgment states that the "Petitioner and Respondent *would have the Court believe* that the deed was executed and delivered for the purpose of avoiding the child support and maintenance awards in favor of the Petitioner," but never expressly comes to that conclusion itself.[5] The judgment indicates that some badges of fraud existed when the deed was delivered, including there being a substantial debt owed by Randy, no consideration given for the property, and that Cassandra was a paramour of Randy at the time of the transfer. However, the judgment goes on to state that "[t]he Court is not convinced that Respondent lacked sufficient means to pay the amount of the judgment or that he was otherwise rendered indigent."

> In Missouri, the badges of fraud include: (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious.

*Higgins v. Ferrari*, 474 S.W.3d 630, 636 (Mo. App. 2015). Thus, the court did not find all badges of fraud present at the time of the deed transfer and, because the court issued its judgment in favor of Cassandra on other grounds, it is unclear from the written judgment whether the court

---

[5]When discussing the status of fraudulent intent at the time Cassandra recorded the deed the court stated, "[t]he badges of fraud, *said to have existed* at the time of the transfer, no longer existed on the date of the Pike County decree except for the remaining debt."

deemed the existing badges of fraud at the deed transfer to outweigh the nonexistent badges thereby proving fraudulent intent, or if the court considered the nonexistent badges to preclude a finding of fraudulent intent. Given that the Eastern District's decision expressed that Randy "had many other items of personal property purchased before the [2004] marriage" that were titled solely in his name, either conclusion by the trial court was plausible and the lack of specificity in the judgment cannot be reconciled by this court.[6] The lack of specificity in the circuit court's judgment is exacerbated by the fact that the court had concluded that Shirley was not entitled to proceed under Section 454.525 – a legal conclusion which we have reversed. Section 454.525.3 addresses the burden of proof in a fraudulent conveyance action brought under Section 454.525, and will be relevant to the disposition of this case on remand. Section 454.525.3 provides in relevant part:

> Where the party seeking to set aside the conveyance presents evidence that the conveyance was made voluntarily and without adequate consideration or in anticipation of entry or enforcement of a judicial or administrative support order, a presumption shall arise that the conveyance was made with fraudulent intent. Upon such a showing, the burden of proving that the conveyance was made in good faith shall rest with the obligor.

The trial court expressly concluded that no badges of fraud existed at the time the deed was recorded because the deed was recorded after Randy and Cassandra's dissolution judgment and was recorded so as to effectuate that judgment. As stated, the record is clear that the deed was recorded prior to, and not after, the dissolution judgment; moreover, the property was set aside to Cassandra as her non-marital property, not as part of an equitable division of the parties' marital property (as the trial court believed). We have no way of knowing if the court would

---

[6]The court specifically listed a 1987 speedboat, 1988 truck, 1993 trailer, and 1999 skid loader as items titled solely in Randy's name prior to 2004. The record is unclear as to when Randy acquired the property, but the age of these properties predate the 2001 deed transfer.

12

have reached the same conclusions if premised on accurate factual determinations. Therefore, as we agree that material findings by the court were against the weight of the evidence, Shirley's second point on appeal is granted.[7]

We conclude that the circuit court erred in declaring that a one-year statute of limitation barred Shirley's Section 454.525 action to set aside a fraudulent conveyance as Section 454.525 provides that a fraudulent conveyance pursuant to the statute is voidable until a good faith purchaser for value retains title to the property. Further, material findings by the circuit court related to the primary issue of fraudulent intent were against the weight of the evidence, eliminating any confidence in the court's conclusions related to those findings. We reverse the circuit court's judgment and remand for a determination of the issues consistent with this opinion.[8]

_____
Anthony Rex Gabbert, Judge


All concur.

---

[7]Shirley's third point on appeal contends that the circuit court erred in basing its judgment on a theory that consideration attached to Randy's transfer of the Indiana deed to Cassandra by subsequent acts because this theory was not raised in Cassandra's pleadings and was not tried by consent. As we have found the court's findings regarding the time frame of the filing of the Indiana deed to be against the weight of the evidence, we need not address this contention.

[8]We note that, because the circuit court disposed of this matter on other grounds, the court did not address Cassandra's affirmative defense of laches. Depending on the court's disposition on remand, it may be necessary to address this affirmative defense; we take no position concerning the applicability of a laches defense in the circumstances of this case.

13