Anthony Rex Gabbert, Judge
Shane Noland (Father) appeals the circuit court's Judgment and Order of Paternity, Custody and Child Support. He asserts four points on appeal. First, he contends that the circuit court misapplied the law in awarding him only supervised parenting time. Second, he contends that the circuit court's Parenting Plan is deficient and provides him inadequate parenting time. Third, he argues that the court abused its discretion in striking his pleadings and allowing him to present no evidence. Fourth, he contends that the court *397 erred in its award of child support. We affirm in part and reverse in part.
Procedural and Factual Information
On November 27, 2015, twin boys were born to Meagan Goodsell (Mother). Mother and Father were unmarried. Mother had two children from a previous relationship. Father had one child from a previous relationship, and another child born to that same relationship after the birth of the twins. Mother informed Father of the pregnancy as soon as she learned of it. Father provided no support to Mother during the pendency of her pregnancy, and no support to the children after their birth. The twins were nearly eleven months old at the time of trial. Although Father had been given the opportunity to visit the twins, Father had never met the children at the time of trial.
On February 18, 2016, Mother filed a "Petition for the Declaration of the Existence or Nonexistence of the Father Child Relationship Under the Missouri Uniform Parentage Act and Order of Support." The State of Missouri, Family Support Division, was named a third party respondent. On March 18, 2016, both the Family Support Division and Father filed answers to the petition. Father's answer denied paternity. DNA testing was ordered by the court and completed. Father stipulated to paternity at trial on October 14, 2016. On November 21, 2016, the court entered its Judgment of Paternity. Father filed a motion for new trial on December 20, 2016. The court denied that motion on January 13, 2017. The court also entered a Judgment Nunc Pro Tunc on January 13, 2017.[1] On January 23, 2017, Father filed an amended motion for new trial which was denied on March 6, 2017. Father appeals the court's Judgment of Paternity.
Additional procedural and factual information will be discussed below as applicable to Father's points on appeal.
Standard of Review
Our standard of review is set forth in Murphy v. Carron , 536 S.W.2d 30, 32 (Mo. banc 1976). Schollmeyer v. Schollmeyer , 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. Id. at 123. We assume that the trial court was motivated by the child's best interests in custody decisions, and we defer to its credibility determinations. O'Connell v. Horton , 313 S.W.3d 702, 705 (Mo. App. 2010). The party challenging the judgment has the burden of proving error. Beckham v. Beckham , 41 S.W.3d 908, 911 (Mo. App. 2001). "We review questions of law de novo. " In Interest of J.L.H. , 488 S.W.3d 689, 693 (Mo. App. 2016).
Point I-Supervised Visitation
In Father's first point on appeal, he contends that the court misapplied Section 452.400[2] in ordering supervised visitation *398 because there is no evidence that he presents a danger to the children's physical health or emotional development. He contends that the court's reasoning for ordering supervised visitation-that the children are of "tender years" and because Father had never met the children-was insufficient under Missouri law to justify supervised visitation. He argues that the court could not "restrict" his visitation without evidence of past physical or emotional abuse or that his visitation would adversely impact the children. We find no error.
Our Missouri Supreme Court made clear in Turley v. Turley , 5 S.W.3d 162, 165 (Mo. banc 1999), that "[e]very visitation agreement confines and limits the visitation of each parent within certain bounds," and that the requirements of Section 452.400.2 discussing the "restriction" of visitation is limited to instances where the court is modifying an existing order.[3] Here, we have an initial award of sole legal and sole physical custody to Mother, with a grant of visitation to Father. Consequently, the trial court's determination regarding Father's visitation was governed by Section 452.400.1(1) which states: "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." Courtney v. Roggy , 302 S.W.3d 141, 151 (Mo. App. 2009) (abrogated on other grounds). Father was awarded visitation. Had he been awarded no visitation, a finding of danger to the physical health or emotional development of the children would have been required under Section 452.400.1(1). As Father was awarded visitation, the question here is whether the court's visitation award was reasonable. The court ordered the following:
Father's[4] Parenting Time : Father shall have supervised parenting time with the minor children every other Sunday from 4:30 PM to 7:30 PM, or other times that may be agreed upon, in writing, by the parties. Mother shall be the supervisor, unless Mother designates a third party to supervise. If Father refuses supervised visitation with Mother or Mother's designated third party, the Guardianship Program at Hope House will supervise all Father's parenting time. If the Guardianship Program at Hope House is utilized, Father shall be responsible for contacting Hope House and arranging for parenting time during the periods ordered by this court. If Father fails to contact and arrange for Hope House parenting time, and if Father fails to provide Mother with fourteen (14) day notice of the scheduled parenting time at the Guardianship Program at Hope House, Father shall forfeit that particular parenting time. Under no circumstances shall Mother be required to contact Hope House or otherwise arrange Hope House parenting time on behalf of Father.
*399 Because Father has never had contact nor requested contact with the children in any meaningful manner, Father shall provide Mother with at least 72 hours' notice if he intends to exercise his supervised visitation. If Father fails to notify Mother at least 72 hours prior to his proposed supervised visitation, or if Father fails to appear for scheduled parenting time, Father shall forfeit his parenting time for that designated week. If Father chooses to exercise his supervised parenting time with the children, Mother, or a third party designated by Mother shall be responsible for picking up and transporting the minor children at the beginning and end of each of Father's parenting sessions. At no time shall the children be removed from the court's jurisdiction during Father's parenting time. Father shall keep Mother informed, in writing, of his current residence and place of work at all times.
Therapeutic Parenting Time : If Father chooses to exercise some sort of therapeutic parenting time, the therapist shall be agreed upon, in writing, by both parties before any therapeutic parenting time shall be scheduled. Any costs or fees associated with therapeutic parenting time shall be born solely by Father, unless otherwise agreed to by the parties.
Transportation of the Children : At no time shall the children be transported without proper child seat protection devices until they are old enough pursuant to Missouri law to travel without these devices. If a party, or third party designate, appears for any exchange without proper child seat safety devices installed in the vehicle to be used for transport of the children, the exchange will not occur. At no time shall the children be transported by any person who does not possess a valid driver's license.
The court awarded Mother all holidays, as well as the children's birthdays. Father was awarded supervised parenting time on Father's Day. The court ordered that Father may have additional parenting time on Father's birthday and during the summer if he has complied with the provisions set forth in the parenting plan regarding supervised visitation, and the parties agreed in writing as to the conditions of the summer parenting time.
Father contends on appeal that, under the facts of his case, the law does not allow for an order of supervised visitation. He argues that, because the legislature commands that he is entitled to substantial, meaningful, and continuing contact with his children, the children's "tender years" and Father's prior lack of contact with the children was insufficient to support an order of supervised visitation. We disagree.
First, Father erroneously argues that the court relied on a "tender years" presumption in determining that Father's visitation be supervised. Father references a statement made by the court as to "the tender age of these children" in an oral declaration of judgment; nowhere does this language appear in the court's written Judgment. In civil cases, "[c]ourts typically disregard a trial court's oral statements made in a ruling on an issue because such statements are not part of the trial court's order or judgment." G.K.S. v. Staggs , 452 S.W.3d 244, 251 n.5 (Mo. App. 2014) (internal quotation marks and citation omitted). Regardless, the court made no findings, even in its oral pronouncement, that solely because of Mother's status as a female and a mother, and/or the young age of the children, custody of the children should be awarded to Mother;[5] rather, the court *400 stated that, because the children were young and Father had never seen the children, supervised visitation with Father was in the best interest of the children at this time.
Second, Father's lack of contact with his eleven-month-old children can and does justify the court's determination that supervised visitation is in the children's best interest. Although the twins were approximately eleven months old at trial, Father had never seen the children. The twins had lived with Mother since their birth and she had been their sole custodian. Although Father was aware of the twins' birth, he chose to provide no support for their care. Mother testified that, after the children were born, she contacted Father and offered for him to see the children. Father's response to these offers was to say nothing or block Mother's attempts to contact him. Father's only request to see the children was on the eve of trial; he requested to meet them at 5:30 p.m. at a convenience store. Approximately three months prior to trial, Father was ticketed for failing to properly restrain his five-year-old child in a motor vehicle, and for driving without a valid driver's license. Father admitted to having no valid driver's license at the time of trial.
Father quotes Missouri legislative policy that "frequent, continuing and meaningful contact with both parents"[6] is preferred and argues that the court, therefore, could not order supervised visitation solely based on Father's lack of contact with the children. Yet, Father ignores that he abandoned his children for the first eleven months of their lives. Even if he were to now deny Mother's claims that he was aware of her pregnancy and the birth of the twins, the paternity action naming him as father was filed a full eight months before trial. For the eight months following legal notice of his alleged paternity, he failed to visit his children and failed to support them. While now touting legislative policy in asserting his rights as a Father in this paternity action, he ignores that in other contexts, specifically Chapter 211 termination of parental rights proceedings and Chapter 453 adoption proceedings, our legislature deems abandonment of a child justification for severing all parental rights. See §§ 211.447.2(2)b; 211.447.5(1); 453.040(7). And, we note that our legislature does make an age distinction in cases of abandonment. Abandonment need only occur for sixty days for a child under one year of age-six months for a child older than one year-for the abandoning parent's consent to an adoption of the child to be unnecessary.[7]
We find the court's visitation award reasonable. It was well within the court's discretion to have determined that Father's complete lack of contact with his eleven-month-old children prior to the Judgment of Paternity warranted supervised visitation until such time as Father's demonstration of a commitment to the children *401 through consistent, appropriate visitation warrants a determination that unsupervised visitation is in the children's best interests.[8]
The circuit court did not misapply Section 452.400 in ordering supervised visitation between Father and his children. Father's first point on appeal is denied.
Point II-Parenting Plan
In Father's second point on appeal, he contends that the court's Parenting Plan is deficient and provides him inadequate parenting time because it makes Mother the sole decision-maker regarding what contact, if any, Father is to have with his children, and fails to include all of the provisions required by Section 452.310.8.
First, in order to be preserved for appellate review, allegations of error in the language of a judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment. Rule 78.07(c).[9] Father did not file a motion to amend the court's judgment; Father filed a motion for new trial and later filed an amended motion for new trial. "A motion to amend a judgment and a motion for a new trial request separate and distinct forms of relief; they are 'not functionally equivalent.' " In re Marriage of Wood , 262 S.W.3d 267, 273 (Mo. App. 2008) (quoting Southard v. Southard , 239 S.W.3d 172, 175 (Mo. App. E.D. 2007)). While we acknowledge that a pleading is not entirely judged by its title but also by its substance and content, "[i]n looking at the substance of the pleading, the paragraph specifying the relief sought has been called 'the critical paragraph.' " Lenz v. Lenz , 412 S.W.3d 487, 490 (Mo. App. 2013) (quoting Gipson v. Fox , 248 S.W.3d 641, 644 (Mo. App. 2008)). The only relief sought by Father in his amended motion for new trial was a new trial. Father never asked the court to amend the judgment. Consequently, we decline to view Father's motion for new trial as a motion to amend the judgment.[10] Father's claim that the *402 court failed to include all statutorily required provisions of Section 452.310.8 in the parenting plan is not preserved for review.[11]
Second, it is clear from the court's Judgment that Mother is not the sole decision-maker regarding Father's contact with his children. The Court Ordered Parenting Plan specifies Father's visitation periods as every other Sunday from 4:30 p.m. to 7:30 p.m. Although Father has the option of Mother or a designee of Mother supervising the visitation, the Parenting Plan allows for Father to arrange visitation through the Guardianship Program at Hope House or with a therapist if he prefers that Mother or a designee of Mother not supervise. These latter options allow Father to control the supervision of his visitation. These options also allow Father to access an unbiased source who could be a beneficial resource in gauging Father's developing relationship with his children. As Mother must arrange for and provide transportation of the children to Father's visitation, it was not unreasonable for the court to require Father to provide advance notice of his visitation election.
Father never contested Mother's proposed visitation schedule which was ultimately adopted by the court.[12] Father cannot now claim error in the court's adoption of aspects of Mother's Parenting Plan that Father never provided an alternative to, did not dispute at trial, and appeared to acquiesce in at trial.[13] Point two is denied.
Point III-Stricken Pleadings
In Father's third point on appeal, he contends that the circuit court erred in striking his pleadings, arguing that Missouri law prohibits striking pleadings in a *403 custody case and that the lower court denied him due process by refusing to allow him to present evidence. We find no error.
"Our scope of review is for abuse of discretion. This standard applies both to a determination to strike pleadings and to a determination to deny the right to present witnesses. The exercise of this discretion will not be disturbed upon review unless it is exercised unjustly." Bell v. Bell , 987 S.W.2d 395, 399 (Mo. App. 1999) (internal citations omitted).
Father's cites no authority for his position that Missouri law prohibits striking pleadings in a custody case; all cases cited by Father involve pleadings stricken for failure to pay child support or on grounds other than discovery violations.[14] Father does not dispute that he failed to respond to Mother's discovery and violated the court's orders to respond. He offers no justification for these violations.
Sanctions may be awarded if 'a party fails to answer interrogatories or file objections thereto within the time provided by law' or 'fails to produce documents and tangible things as requested under Rule 58.01.' Rule 61.01(b), (d). Sanctions may include the following orders: (1) striking pleadings or parts thereof and (2) entering default judgments. Rule 61.01(b), (c). When a party fails to produce documents, the court may also enter an order 'refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibit the disobedient party from introducing designated matters in evidence.' Rule 61.01(d)(1). The court's choice as to which sanction promotes the purpose of discovery is a matter of its discretion. J.B.C. v. S.H.C. , 719 S.W.2d 866, 870 (Mo. App. E.D. 1986). The selection of sanctions 'should depend on the nature of the information sought in relation to the proceeding, what orders will best assist the litigant seeking the information, and the benefits and disadvantages to the litigants and the court resulting from the sanction chosen.' Id. 'Any Rule 61.01 sanction in excess of that which is necessary to accomplish the purposes of discovery may be an abuse of discretion.' Id. at 872. We will not reverse a trial court's sanctions unless they reflect an abuse of discretion. Crimmins v. Crimmins , 121 S.W.3d 559, 561 (Mo. App. E.D. 2003).
Doss v. Brown , 419 S.W.3d 784, 789 (Mo. App. 2012). "The trial court's exercise of its discretion should be directed towards accomplishing fundamental fairness and avoiding unfair surprise." In re Marriage of Mangus , 227 S.W.3d 510, 512 (Mo. App. 2007).
On June 6, 2016, Father was served with Family Support Division's Request for Interrogatories and Production of Documents, which he acknowledged receiving in open court on July 8, 2016. Family Support Division sent a Golden Rule Letter to Father on July 11, 2016, requesting compliance. After Father failed to respond to these requests, Family Support Division filed the State's Motion for Enforcement of Discovery, along with Suggestions in Support, on August 12, 2016. Family Support Division asked the court to compel Father to respond within fifteen days or risk his *404 pleadings being stricken and being prohibited from offering evidence at trial. On August 23, 2016, the court entered an Order of Enforcement of Discovery and Sanctions Pursuant to Rule 61.01, providing that Father's pleadings would be stricken if discovery was not completed within ten days from the date of the order. When Father failed to comply, Family Support Division filed a Motion to Strike Father's pleadings on September 7, 2016.
On October 3, 2016, the court issued an order titled: "Order Striking Shane Noland's Pleadings Pursuant to Rule 61.01." The body of the order, however, stated: "Counsel for Shane Noland advised the Court and all parties that discovery responses will be produced no later than Monday, October 3, 2016. As a result, the Motion shall be denied at this time." At trial on October 14, 2016, Father admittedly still had not produced all ordered discovery. He produced nothing to Mother, and to the Family Support Division produced no requested documents and incomplete interrogatories. He failed to provide any information regarding his current employment, other than that he worked for his father at Tom Noland Roofing. Family Support Division and Mother asked that Father's pleadings be stricken and that he have no opportunity to present any evidence or cross-examine on the issue of child support.
The court concluded that Father could testify and cross-examine witnesses, but that he had "been well-advised as to his need to comply with discovery requests" and that his failure to do so impacted the ability of the court to fully process the evidence. The court struck Father's pleadings.
We find no abuse of discretion in the trial court striking Father's pleadings and refusing to allow evidence other than Father's testimony. Father's failure to provide discovery on pertinent issues subverted Mother's ability to present her own case. Further, Father makes no showing that the court's sanctions disadvantaged him in any way.
Father gave Mother no information regarding his income so that she could properly prepare a proposed Form 14. Mother, therefore, used data gathered through the Missouri Economic Research and Information Center to impute Father's income in calculating her Form 14. Father was allowed to testify at trial, however, and testified that, although he works as a roofer for his father's construction company, he has no proof of income because he is paid in cash and pays no taxes. He testified to earning approximately half of what Mother's statistics showed the average wage of a Missouri roofer to be. The court found Father's testimony to lack credibility and stated:
With regard to child support, it's up to me to weigh the credibility of the parties and evaluate whether I believe or disbelieve what they are telling me.
And, Mr. Noland, I have to tell you your testimony is very difficult to believe. You contradicted yourself several times about, for instance, the two children that you have with another person, as to where they live, where you live, whether you had a house, you didn't have a house. It's very, very hard to believe your testimony. And I understand you get paid cash under the table, you are not paying any taxes. That concerns me, and that also lends to your credibility. Someone who is not paying-filing tax returns really gives me cause for concern.
Nevertheless, the court utilized Father's averments regarding his monthly income, rather than Mother's estimate, in calculating the court's Form 14. Mother does not challenge the court's Judgment, and we *405 presume the court had sound reasons for utilizing Father's testimony even after finding it unbelievable.
The court allowed Father to testify on his own behalf regarding all aspects of the case and to cross-examine Mother's witnesses. Although Father now claims that he "could not challenge Mother's contention that he made no effort to see his children with evidence that he attempted to do so," Father testified but offered no testimony regarding these alleged attempts. He cross-examined Mother but did not question Mother regarding these claims. Although Father now contends that he was prevented from offering his own parenting plan for the trial court's consideration, he never attempted to file a proposed Parenting Plan until after disobeying a court order informing him that noncompliance with discovery would result in his pleadings being stricken. Father had the opportunity to testify at trial regarding his own proposed parenting plan. He did not.
The issues before the court were custody, visitation, and child support. At trial, Father mostly agreed with Mother's recommendations for custody and visitation;[15] the only significant dispute with any practical effect regarded child support. Father claims that he should have received credit on the Form 14 for his two other children residing with him, and the court's sanctions prevented the mother of those children from testifying as to how often he had physical custody. He argues that, without this testimony, the court was unable to fully assess the issues. Yet, Father made no offer of proof regarding what this woman's testimony would have been.[16] "A litigant who complains about the exclusion of evidence should make an offer of proof to inform the trial court of the content of the proffered evidence and to allow an appellate court to determine the prejudicial effect of the exclusion." Brady v. Brady , 39 S.W.3d 557, 560-61 (Mo. App. 2001). "The preferred method to make an offer of proof is to ask witnesses questions and have them answer on the record." Ijames v. Ijames , 909 S.W.2d 378, 379 (Mo. App. 1995).
Father fails to prove that the court's sanctions deprived him of due process or the ability to present a defense. Father had full notice of the ramifications of noncompliance with discovery; the deprivations Father now alleges he received as a result of his noncompliance were of his own doing. Father's third point on appeal is denied.
*406 Point IV-Child Support Calculation
In Father's fourth point on appeal, he contends that the circuit court erred in its award of child support by incorrectly calculating the Form 14. He argues that the court failed to give him credit for other child support that he was court-ordered to pay or, in the alternative, credit for other children residing in his home. He contends that the court entered an inaccurate amount of work-related childcare expenses. Additionally, he claims that the child support award is excessive for various reasons, including that he is entitled to a Form 14, Line 11 credit for overnight visitation.
When reviewing a circuit court's child support award, we ensure that it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. Beermann v. Jones , 524 S.W.3d 545, 549 (Mo. App. 2017) (citing Murphy v. Carron , 536 S.W.2d at 32 ). "[W]e view the evidence in the light most favorable to the judgment, disregarding all contrary evidence and giving deference to the trial court's determinations of credibility." Blomenkamp v. Blomenkamp , 462 S.W.3d 429, 432 (Mo. App. 2015). "We review a circuit court's Form 14 calculation to ensure the calculation was done accurately from a mathematical standpoint and that the various items and their amounts were included in the calculation and supported by substantial evidence." Heckman v. Heckman , 422 S.W.3d 336, 340 (Mo. App. 2013) (internal citations and quotation marks omitted).
Form 14-Line 2a and 2c
Father argues that the court was obligated under the Form 14 instructions to credit him for the amount of child support he was ordered to pay for two children not of this relationship or, in the alternative, credit him for those children living with him. We disagree. Although the Directions for Form 14, Line 2a state that an adjustment should be given for "the monthly amount of any other court or administrative order for child support of any child not the subject of this proceeding," the Directions provide the caveat that, "The adjustment for a child for whom there is an existing court or administrative order shall be reduced by the amount that is actually being paid in current support payments." The trial court gave Father no credit on Line 2a because the court found that Father was paying nothing in current child support payments. This finding is supported by the record.
Father argues in the alternative that the court was obligated to give him a credit on Line 2c. The Directions for Form 14, Line 2c state that a parent will be entitled to an adjustment "for any children primarily residing in his or her custody and not the subject of this proceeding." The evidence at trial, in the light most favorable to the court's judgment, was that a custody order had been entered regarding Father's other two children giving the children's mother sole legal and sole physical custody. Although Father testified that, despite this two-month-old custody order he actually had the children in his physical custody, the court was entitled to disbelieve Father's averments. The court did not err in failing to give Father a Line 2a or Line 2c credit.
Excessive Award-Form 14, Line 11
Father's contention that the court's child support award is excessive is essentially a claim that the court should have rebutted its Form 14 calculation as unjust and inappropriate. Elliott v. Elliott , 920 S.W.2d 570, 577 (Mo. App. 1996). We review such claims for abuse of discretion.
*407 In re Marriage of Witt , 487 S.W.3d 519, 526 (Mo. App. 2016).
Father contends that the child support ordered by the court is excessive because it leaves him with insufficient funds to provide for his own needs, and because the income remaining for his own expenses falls below the minimum self-support reserve. He argues that the court found his gross income to be $2,600 per month, and after paying child support to Mother in the amount of $1,620, and child support to the mother of his other children in the amount of $726, he has only $254 remaining to meet his own expenses. He argues that his state and federal taxes alone equal $547.67 per month.
"Rule 88.01 creates a rebuttable presumption that the Form 14 amount is the correct amount of child support to award." Elliott, 920 S.W.2d at 577. "The rule places a burden on the party seeking to rebut the Form 14 amount to show that it is unjust or inappropriate after consideration of all relevant factors including the guidelines in Section 452.340.1." Id. One relevant factor to be considered is the "financial resources and needs of the parents." § 452.340.1(1)
Father fails to prove his claim that the court's award is excessive. Father makes factual claims on appeal that were not before the trial court or are directly refuted by the record. Father contends that the court's award is excessive when taking into account Father's other child support and tax obligations. Yet, Father admitted at trial that he was not paying his other child support obligation and that he pays no taxes. Had Father been paying his other child support obligation, he would have received a credit on the court's Form 14 calculation. Although the court used Father's averment of $2,600 income per month in calculating Father's child support, the court expressly found Father's testimony to lack credibility; the court suggested that Father actually makes more than $2,600 per month: "So even taking your word for it that you're really making only $2,600 a month, with that my calculation puts child support at $1,620 a month."
Father additionally claims that the child support award is excessive because he was entitled to a Form 14, Line 11 credit for overnight visitation. Father was granted no overnight visitation; consequently, he was entitled to no overnight visitation credit.
"Without evidence to the contrary, we can infer in ordering [Father] to pay child support in the Form 14 amount calculated, that the trial court considered his ability to pay and found the Form 14 amount was not unjust or inappropriate which is a prerequisite to rebutting a Form 14 amount." Id. Father fails to point to any evidence in the record that the court's child support award is excessive in relation to Father's actual income, actual expenses, and actual needs. Consequently, the court did not abuse its discretion in declining to rebut its Form 14 as unjust or inappropriate.
Form 14-Line 6
Father argues that the court entered an inaccurate amount for Mother's work-related childcare expenses in Line 6. We agree. The Directions for Form 14, Line 6a, state: "Enter the monthly amount of any reasonable work-related childcare costs incurred or to be incurred for the children who are the subject of this proceeding by the parent entitled to receive support." The court entered $2,040 in Line 6a(1) as Mother's work-related childcare costs. The court deducted the Child Care Tax Credit of $140 in Line 6a(2) to reach a figure of $1,900 for Line 6. This entry is not supported by substantial evidence. Mother listed work-related childcare costs on her Form 14 as $1,040. This amount is *408 consistent with her trial testimony that she pays childcare costs of $240 per week for the twins; this calculates to $1,040 per month when averaged over one year. After deducting the Child Care Tax Credit, Mother listed her total childcare costs on Line 6 of her Form 14 as $900.
The additional $1,000 added by the court appears to be a scrivener's error; it appears that $2,040 was added to Line 6a(1) rather than the $1,040 reflected in the evidence.[17] Rule 84.14 authorizes this court to "give such judgment as the court ought to give" and to "dispose finally of the case" unless justice otherwise requires. However, because it is within the circuit court's province to initially review a child support award for justness and appropriateness, we remand this matter to the circuit court to make an appropriate award of child support consistent with the evidence. Given that trial was over fifteen months ago, the circuit court may, in its discretion, require the parties to submit updated Form 14's and/or entertain additional evidence related to the Form 14.
Father's fourth point on appeal is denied in part and granted in part.
Conclusion
We conclude that: 1) the circuit court did not misapply the law in ordering supervised visitation for Father as supervised visitation was reasonable under the circumstances, 2) the court's Parenting Plan does not make Mother the sole decision-maker regarding what contact Father has with his children, 3) the court did not abuse its discretion in striking Father's pleadings for discovery violations and refusing to allow evidence other than Father's testimony, 4) Father fails to prove that he was entitled to a credit on Line 2c of the Form 14, or that the court's child support award is excessive, and 5) the circuit court's entry on Line 6 of the Form 14 is not supported by substantial evidence.
This case is remanded to the circuit court for entry of a just and appropriate child support award consistent with the evidence.
All concur.

Although in the conclusion paragraph of Father's brief, Father challenges the content of the court's Judgment Nunc Pro Tunc as making substantive changes to the judgment, he makes no formal claim of error regarding the Judgment Nunc Pro Tunc. We, therefore, decline to address this claim. "An argument that is not included within the points relied on is not preserved for appeal." Dep't of Soc. Services v. Peace of Mind Adult Day Care Ctr. , 377 S.W.3d 631, 642 n.14 (Mo. App. 2012). Regardless, we need not and do not rely on the Judgment Nunc Pro Tunc in reaching any of our conclusions herein.

All statutory references are to the Revised Statutes of Missouri as supplemented through August of 2016.

Section 452.400.2(1) states: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child, but the court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger the child's physical health or impair his or her emotional development." (Emphases added). Section 452.400.1(1), however, regards an initial custody determination and states: "A person not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development." (Emphases added).

The court's Judgment references Mother as "Petitioner" and Father as "Respondent." For the benefit of the reader, we replace the trial court's references with "Mother" and "Father" as applicable.

Missouri's abolishment of the "tender years presumption" is codified in Section 452.375.8:
As between the parents of a child, no preference may be given to either parent in the awarding of custody because of that parent's age, sex, or financial status, nor because of the age or sex of the child. The court shall not presume that a parent, solely because of his or her sex, is more qualified than the other parent to act as a joint or sole legal or physical custodian for the child.

Citing Section 452.375.4.

In Chapter 211 proceedings, although the six-month time frame is required to establish abandonment for a child over the age of one year (Section 211.447.5(1)), no time frame is designated for "infants" under the age of one year (Section 211.447.2(2)(b)).

Beyond this, although Father requested that he be granted joint physical custody at trial, in his trial testimony he clearly agreed to his visitation being supervised, at least initially. "The general rule of law is that a party may not invite error and then complain on appeal that the error invited was in fact made." Percy's High Performance, Inc. v. Krou gh , 445 S.W.3d 577, 581 (Mo. App. 2013) (internal quotation marks and citations omitted). "That is, parties are bound by the positions they took at trial, and cannot obtain relief on appeal based on an error in which, by their own conduct, they joined or acquiesced." Id. While we find no error here, the court was required to enter a custody and parenting plan deemed to be in the best interest of the children. It can be inferred from both Father's and Mother's testimony that supervised visitation with Father would initially be in the children's best interests.

All rule references are to the Missouri Supreme Court Rules (2017) unless otherwise noted.

We also note that Father's original motion for new trial is not included in the record on appeal. Footnote 19 of Father's brief states that his amended motion for new trial was identical in every respect to his first motion, "except for additional claims of error." Even if we were to consider Father's motion for new trial as a motion to amend the judgment, we would be unable to ascertain whether all of his claims on appeal were preserved for review. If an after-trial motion is required to preserve an issue, only issues raised in a timely after-trial motion are preserved. Smith v. Brown & Williamson Tobacco Corp. , 410 S.W.3d 623, 641 (Mo. banc 2013). "Once the thirty day period in Rule 75.01 expires, a trial court's authority to grant relief is constrained by and limited to the grounds raised in a timely filed, authorized after-trial motion." In re Smythe , 254 S.W.3d 895, 897-898 (Mo. App. 2008) (internal quotation marks and citations omitted). Father's initial motion for new trial was timely. His amended motion was filed more than thirty days after the court's entry of Judgment and was, therefore, untimely. Hence, any "additional claims of error" raised in the amended motion that were required by Rule 78.07(c) to be included in the original motion were not preserved.

We note, ex gratia , that the majority of the alleged excluded provisions appear to involve issues that are inapplicable to this case at this time due to Mother receiving sole legal and sole physical custody of the children, Father receiving supervised visitation, and the children not yet being school age. Father contends that the court failed to include such items as transportation duties associated with the residential schedule, appropriate times for telephone access, details regarding how decision-making rights and responsibilities will be shared, methods of communicating school information, a dispute resolution procedure for those matters on which the parties disagree, etc. Father apparently recognizes the inapplicability or determination by default of some of these Section 452.310.8 provisions in arguing that, "[w]hile the lower court may award sole custody to Mother, that does not absolve the court's responsibility to enter a parenting plan that complies with Missouri law."

Father contends in his reply brief that the court did not adopt Mother's Parenting Plan and it is not Mother's Parenting Plan, but the Court Ordered Parenting Plan Father contests. The court's Judgment states: "Thus, it is in the best interests of the minor children to adopt and incorporate Petitioner Meagan Goodsell's parenting plan in the Judgment with certain exceptions as ordered by the court." In all significant respects, the Court Ordered Parenting Plan tracks the supervised visitation language in Mother's proposed Parenting Plan.

Father claims that, "[t]o date, Father has never seen his children because Mother always has some excuse why he cannot and/or because she had refused to give him her telephone number because the lower court didn't order her to do so." The court found that, prior to trial, Mother had repeatedly attempted to contact Father regarding parenting time and had been ignored or rebuffed in every instance. Inherent in the court's order requiring Father to give Mother advance notice as to visitation elections is the presumption that Mother will make herself available for such notice. The court's order puts all parties on notice that, pursuant to Section 452.375.10, if custody or visitation is denied or interfered with by either parent, the aggrieved party may file a family access motion with the court.

In Noel v. Noel , 278 S.W.3d 217 (Mo. App. 2009), although the father failed to comply with discovery requests, the court's reason for striking the father's pleadings and refusing to allow him to testify or otherwise present evidence was due to his failure to pay child support. In Cosby v. Cosby , 202 S.W.3d 717 (Mo. App. 2006), a dissolution of marriage action, the appellate court found that the husband was in violation of no discovery orders at the time the court struck the husband's pleadings for discovery violations.

Although Father testified to desiring joint physical custody of the children rather than Mother having sole physical custody, Father agreed that his lack of contact with the children warranted initial supervised visitation with the hopes of increasing that visitation over time.

The court justifiably found Father's testimony regarding custody of his other two children to lack credibility. Father admitted that in August of 2016, just two months prior to the hearing in this matter, he agreed to the mother of his other two children having sole legal and sole physical custody. He acknowledged the court order reflecting this agreement. He testified that he did not have a home at that time and was living with his parents. When asked if the situation between Father and his two other children changed from August of 2016 to the date of the hearing, he responded, "I don't know." He then changed his testimony to say that the children were staying with him every weekend in August of 2016. When asked about the custodial arrangement between Father and his other two children between June 2016 and August 2016, he stated: "I don't know. I mean, I seen them when I could. I don't know." He then testified that between August of 2016 and the trial, his other two children (one five years old and the other four months old) had moved in with him full-time with the children's mother staying at her own residence.

Although Mother argues on appeal that the additional $1,000 added by the court represents Mother's work-related childcare costs for her two children not the subjects of this proceeding, only childcare costs "for the children who are the subject to this proceeding" are to be included in the Form 14 computation pursuant to the Form 14 Directions to Line 6a. Further, nothing in the record, including Mother's testimony and the court's oral pronouncement regarding its child support calculations, suggests that the additional $1,000 represents childcare costs of Mother's other children. Mother provided invoices to the court showing that she pays approximately $347 per month for the care of her other two children.