

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| NATIONAL HISTORIC SOUL JAZZ BLUES WALKER FOUNDATION, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | WD86024 |
| v. | ) | OPINION FILED: |
| | ) | DECEMBER 12, 2023 |
| ALTCAP, A MISSOURI NOT FOR PROFIT CORPORATION, ET AL., | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Mark A. Styles, Jr., Judge**

**Before Division One: Edward R. Ardini, Jr., Presiding Judge,**
**Anthony Rex Gabbert, Judge, Janet Sutton, Judge**

National Historic Soul Jazz Blues Walker Foundation ("Appellant") appeals the circuit court's judgment which found in favor of Altcap and Ulysses Clayborn, Trustee, ("Respondent" collectively) on Appellant's "Verified Petition for Temporary Restraining Order, Preliminary Injunction, Injunction to Enjoin Unlawful Foreclosure and for Quiet Title." Appellant contends the circuit court, 1) erred in ruling that Appellant and her partner were parties to a Note that was contemporaneously executed with the Deed of Trust, which related to the Note by direct reference or by implication, and that the two instruments should be construed together as the entire contract for the loan, because a promissory note was not executed by the grantor of the Deed of Trust, and 2) erred in

ruling that Appellant and her partner were parties to a Note because Appellant never executed a promissory note and the lack thereof violates the Statute of Frauds and should have been fatal to Respondent's position at trial. We affirm.

### Background and Procedural Information

Lisa Walker Yeager is Appellant's "President" with authority to act on Appellant's behalf. On December 26, 2017, Dorothy Estis created Mardi Gras Investment Group, Inc. ("Mardi Gras") with the purpose "to buy, sell, rent, rehab, and develop residential and commercial properties." AltCap is a lending institution.

On January 3, 2018, AltCap's Director of Lending emailed Lisa Yeager and Dorothy Estis confirming receipt of a loan application "from Mardi Gras Investment Group, Inc. who is in partnership with National Historic Soul Jazz Blues Walker Foundation Inc." and asking them to "send over the remaining items as soon as you can." The confirmation letter states that the loan application regards 1600 E 19th Street, Kansas City, MO 64108 (the "Property"), and the purpose of the loan request was to repair the facade and walls of the Property.

On January 4, 2018, a twelve-page "Joint Venture Agreement" was executed between Appellant, through Lisa Yeager, and Mardi Gras, through Dorothy Estis. Appellant and Mardi Gras were the only "Members" of the joint venture. The purpose of the venture was "to preserve our cultural heritage a black national historic treasure to remove blight in the community by rehabing [sic] this building." The venture was to begin January 4, 2018, and continue until the Property was restored. The place of

2

business for the venture was to be located at the Property. Lisa Yeager and Dorothy Estis were appointed "Managers" of the venture. Authority to bind the venture in contract or in any third-party business relation was to lie exclusively with the managers, acting jointly.

Pursuant to the Joint Venture Agreement, Appellant was to control the rehab of the building, make decisions regarding development, and meet with contractors. Mardi Gras was to sign all contracts, and all financial obligations were to be paid through Mardi Gras. Each member contributed to the capital of the venture in cash or property. Mardi Gras' capital contribution was: "Financial lending contribution of the rehab/development of NHSJB Walker Foundation." Appellant's capital contribution was: "Property owned by NHSJB Walker Foundation as collateral for the [] lending purposes. There will be tax rebates provided for the development."

On February 6, 2018, Lisa Yeager emailed AltCap's Director of Lending with the subject, "1600 E. 19th Letter for Approval City Planning." Yeager stated in the body of the letter that she completed the application for Certificate of Appropriateness that was approved by the City Planning Office and Preservation Office of Kansas City. Further, she would be picking up her license/permit to start work. On February 7, 2018, the Director of Lending responded that the documents had been received, and that the loan committee would be meeting the following Tuesday "for final review and hopeful approval."

On February 23, 2018, AltCap addressed a letter to Dorothy Estis/Mardi Gras regarding "Loan Approval." The letter stated in bold type at the top: "**This loan**

3

**commitment is CONTINGENT on clear and proper title work**." The letter went on to state that AltCap had approved the loan request and that, based on Estis's personal credit history, personal financial statements, and information included in the loan application, AltCap's loan approval was subject to several terms and conditions. The loan amount would be for $50,000 and was "to be used to cover working capital needed to rehab subject property and getting it ready for rental." "Collateral" of "First Deed of Trust on property address: 1600 E. 19th St KCMO 64108" was a required condition. Dorothy Estis was required to "provide unlimited personal guarantees of the loan." Dorothy Estis agreed to the terms and conditions on behalf of Mardi Gras as borrower, and personally as guarantor.

On March 7, 2018, Mardi Gras as borrower and Dorothy Estis as guarantor entered into a "Loan Agreement" with AltCap wherein AltCap agreed to lend $50,000 at nine percent interest. Collateral for the loan was described as, "Deed of Trust on the real property which has an address of 1600 E. 19th St, Kansas City, Missouri 64108" and "the guarantee of Dorothy L. Estis." Included within the Loan Agreement as remedies for the borrower's default was that AltCap could, among other things, take possession of the collateral, sell or dispose of the collateral pursuant to the law, foreclose on any real or personal property by strict foreclosure in equity, and pursue any and all other remedies available under the law to enforce AltCap's rights. D.B. signed for AltCap as Loan Administrator.

Under Article 1, Section 1.01 of the Loan Agreement, a promissory note was stated to be attached as Exhibit "A" and incorporated therein. There was no promissory note attached. "Exhibit A," titled "PLEDGE OF PERSONAL PROPERTY AS COLLATERAL SECURITY," was attached. It was signed the same day as the Loan Agreement, March 7, 2018, by Lisa Walker Yeager as "Pledgor" and D.B. as AltCap's representative as "Pledgee." The document states that, for value received, Yeager was depositing and pledging as collateral, to secure the payment of the business loan issued to Mardi Gras on March 7, 2018:

The following personal property (collateral) described as:

- Property with an Address of <u>1600 E. 19th St Kansas City, MO 64108</u> with a legal description of:

ALL THAT PART OF THE WEST 62 FEET OF THE SOUTH 20.57 FEET OF LOT 5 AND THE WEST 62 FEET OF LOT 7, ELDER'S ADDITION, A SUBDIVISION IN KANSAS CITY, JACKSON COUNTY, MISSOURI, MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 7, SAID POINT BEING ON THE EAST RIGHT-OF-WAY LINE OF VINE STREET; THENCE N02°25'39"E, ALONG SAID EAST RIGHT-OF-WAY LINE, 45.07 FEET TO THE NORTHWEST CORNER OF THE SOUTH 20.57 FEET OF SAID LOT 5, THENCE, S87°27'10"E, ALONG THE NORTH LINE OF THE SOUTH 20.57 FEET OF SAID LOT 5, 22.50 FEET TO THE EAST FACE OF A 2-STORY BRICK BUILDING; THENCE S02°48'32"W, ALONG THE EAST FACE OF SAID BRICK BUILDING, 45.07 FEET TO THE SOUTH LINE OF SAID LOT 7, SAID POINT BEING ON THE NORTH RIGHT-OF-WAY LINE OF E. 19TH STREET; THENCE N87°27'10"W, ALONG SAID NORTH RIGHT-OF-WAY LINE, 22.20 FEET TO THE POINT OF BEGINNING, CONTAINING 1,007 SQUARE FEET, MORE OF LESS.

Yeager agreed that, in the event of default of payment of the debt or breach of the pledge agreement, AltCap would have "full rights to foreclose on the pledged collateral and exercise its rights as a secured party."

Despite not being attached as Exhibit A to the Loan Agreement, a promissory note was contemporaneously (March 7, 2018) signed by Dorothy Estis on behalf of Mardi Gras as "Borrower" and herself as "Guarantor." Therein, the two agreed to repay $50,000 to AltCap at nine percent interest and under the additional terms of the note. Under the provision "Evidence of Indebtedness," the promissory note provides that, "The indebtedness evidenced by this Note is secured by a Deed of Trust ('Deed of Trust') executed the same date as this Note; which Deed of Trust encumbers certain real and personal property, including improvements, located in Jackson County, Missouri." In the event of default, AltCap was authorized to pursue any available remedies, including those provided in the promissory note or other loan documents. On March 7, 2018, Estis also signed a separate "Guaranty" to repay the loan.[1]

On March 7, 2018, a "Deed of Trust" was signed by Lisa Yeager on behalf of Appellant as "Grantor." Therein, Appellant granted Ulysses Clayborn, identified as "Trustee," the estate, right, title and interest in the "real estate in Jackson County,

---

[1] Lisa Yeager signed an undated "Authorization Agreement for Preauthorized Payments" on behalf of Mardi Gras allowing AltCap to initiate debit and/or credit entries to/from a specified bank account. Appellant alleged as a Statement of Uncontroverted Material Fact, and Respondent agreed, that this authorization represented documentation of the $50,000 loan to Mardi Gras. Both Dorothy Estis and Lisa Yeager are included as an "Authorized Signer" on the document.

Missouri" described in attached Exhibit A. Exhibit A provides the legal description of the Property. The Deed of Trust references the Property as the "Mortgaged Property." AltCap is identified as "Lender" and "Grantee" in the Deed of Trust. The Deed of Trust states that, on that same date, Appellant executed and delivered to Lender a Promissory Note in the principal amount of $50,000, bearing interest at a rate of nine percent per annum. The Deed of Trust was to secure payment of the indebtedness represented by the note and any other indebtedness at any time arising under the Loan Agreement. The Deed of Trust provides that, if the indebtedness was paid when due and all other agreements kept, the Deed of Trust would become void and Appellant would be released by Lender. However, if there was a default in payment of the indebtedness, the Trustee, at the request of the holder of the indebtedness, would sell the Property under the terms set forth in the Deed of Trust.

On March 7, 2018, A "Loan Draw Request" was submitted to AltCap and signed by Dorothy Estis for the amount of $20,000. On March 15, 2018, a "Loan Draw Request" was submitted by Dorothy Estis and signed by Lisa Yeager requesting a final disbursement of $24,474.20. Both disbursements were approved. The paperwork shows disbursement for the $50,000 loan as follows: $2,135.00 for origination fees and title work, $20,000.00 for the initial disbursement, $3,390.80 to pay taxes, and $24,474.20 for the final disbursement.

On April 26, 2018, Lisa Yeager sent AltCap an email indicating that Yeager had previously spoken with AltCap regarding the necessity of amending the Deed of Trust to

reflect that Mardi Gras, and not Appellant, was the borrower of the loan. On June 1, 2018, Yeager sent another email advising that Appellant was not the borrower and that AltCap was refusing to correct the Deed of Trust. AltCap responded that legal counsel was working on the matter and provided contact information to AltCap's legal counsel. On February 19, 2019, AltCap's legal counsel emailed Lisa Yeager and Dorothy Estes indicating that a Reformation of the Deed of Trust had been prepared and was awaiting their signatures. The Reformation of the Deed of Trust was attached.

On September 24, 2019, notice of default was sent by AltCap's counsel to Appellant in care of Lisa Yeager. Demand was made for all delinquent payments.

On November 12, 2019, AltCap's counsel sent Lisa Yeager's counsel notice that AltCap had prepared a Reformation of the Deed of Trust which had been presented to Yeager but that Yeager had failed to execute. The notice requested assistance in obtaining the signed Reformation of the Deed of Trust. The letter stated that, if Yeager was unwilling to execute the Reformation, it would be treated as default under the Deed of Trust and remedies thereunder would be pursued.

On March 27, 2020, Notice of Trustee's Sale was posted by Trustee advising that on May 7, 2020 at 2:00 p.m., said sale would occur on the front steps of the Jackson County Courthouse in Kansas City.

On May 4, 2020, Appellant filed its "Verified Petition for Temporary Restraining Order, Preliminary Injunction, Injunction to Enjoin Unlawful Foreclosure and for Quiet Title." Therein Appellant alleged that it was not a borrower of any funds from

Respondent, had not executed a promissory note wherein Respondent was the holder, and the Deed of Trust was executed by Appellant pursuant to a transaction where certain documents were executed, but which never occurred or were funded. The petition alleged that the Deed of Trust secured no promissory note or any other form of debt between Appellant and Respondent and, therefore, was fatally flawed and of no force or effect. Further, the Deed of Trust secured nothing at all relating to Appellant.

In Count 1, Appellant asked for a temporary restraining order enjoining Appellant from holding the Trustee Sale until issues raised in the petition were resolved. In Count 2, Appellant asked for a preliminary injunction enjoining any trustee's private foreclosure sale. In Count 3, Appellant asked for a permanent injunction enjoining Respondent's Trustee Sale, alleging there was no promissory note or debt between Appellant and Respondent, and the Deed of Trust was null and void as it secured no debt between Appellant and Respondent. In Count 4, Appellant asked the court to "try, ascertain and determine the estate, title and interest of the parties, [Appellant] and [Respondent] herein, severally in and to the Property and to define adjudge and order by way of its judgment" and decree Appellant sole fee simple owner of the Property, free and clear of any Deed of Trust or any other interest Respondent claimed. Further, that Respondent be forever enjoined and restrained from asserting, claiming, or setting up any right, title or interest in and to the Property.

On May 6, 2020, an "Order Setting Evidentiary Hearing on Motion for TRO and Pretrial Scheduling Order" was issued by the court. Therein, the court noted a stipulation

9

by the parties to postpone the foreclosure sale until Thursday May 14, 2020. An evidentiary hearing was scheduled for May 11, 2020.

On May 11, 2020, Respondent filed "Defendants' Response in Opposition to Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction." Respondent also moved to dismiss Appellant's case. On May 12, Appellant filed a Reply to Respondent's filings.

On May 14, 2020, the circuit court issued a Temporary Restraining Order, and on May 26, 2020, the circuit court issued an Amended Temporary Restraining Order correcting clerical errors within the May 14 order. The order restrained and prohibited Appellant from pursuing the foreclosure sale of the Property or taking any other steps in furtherance thereof. The order was to remain in effect for fifteen days unless an extension was ordered. Stipulations for extensions were agreed upon thereafter.

On September 1, 2020, Appellant filed a "Motion for Summary Judgment for Injunctive Relief and Quiet Title." The uncontroverted material facts set forth the various documents and correspondence described above.

On October 6, 2020, Respondent filed a response opposing Appellant's motion. Respondent's uncontroverted material facts described that Dorothy Estis had known Lisa Walker Yeager for a considerable period of time as they grew up on the same block and were like sisters. Yeager approached Estis's mother about becoming a joint venture partner with Appellant to assist with the renovation and reopening of the building Appellant owned at 1609 E. 19th Street in Kansas City, Missouri. Yeager advised Estis

that she had to obtain a loan to save the building, and needed the loan quickly because the City of Kansas City was threatening a receivership action if repairs were not immediately made. Estis's mother was recovering from cancer and Estis did not think it wise for her mother to become involved.

At Yeager's request, Estis consented to become a joint venture partner, through Mardi Gras, with Appellant. Yeager prepared the Joint Venture Agreement. Estis spent a considerable amount of time working with Yeager to obtain a loan from AltCap for $50,000. Yeager was with Estis at every meeting she had with AltCap. Yeager was included in a number of emails from AltCap. Yeager was listed on the Pledge of Property. She was also listed on the Authorization Agreement for Preauthorized Payments. Yeager was an authorized signature for any checks written on behalf of the joint venture. It was always Estis's and Yeager's intent that Estis would provide a personal guarantee for repayment of the loan, and Yeager would secure the loan with the Property as collateral through a Deed of Trust executed by Yeager.

The discussions Estis had with Yeager caused Estis to believe that Yeager understood if she did not sign a Deed of Trust pledging the building as collateral, they would not receive the loan from AltCap that was needed to save it. Yeager obtained comps to prove the worth of the Property as part of the effort to secure permission from AltCap to use the Property as collateral for the loan. Part of the AltCap loan was used to pay back taxes on the Property. The additional money received from the AltCap loan was used to make repairs on the Property. Estis never profited from the Altcap loan. Estis

11

invested personal proceeds to assist with renovation of the Property and had not received reimbursement.[2]

On May 26, 2021, the court denied Appellant's motion for summary judgment. Trial was set for October 19, 2021. Evidence was heard on that date and the court took the matter under advisement with post-trial briefs requested of the parties.

On January 20, 2023, the circuit court entered Judgment in favor of Respondent and against Appellant on all counts. The court found that Appellant entered into a Joint Venture Agreement with Mardi Gras to renovate and reopen the Property. Further, that Lisa Yeager, as Appellant's President, granted a Deed of Trust to AltCap securing a promissory note in the principal amount of $50,000.00. The court found that, under Missouri law, joint ventures are governed by rules of partnerships with every partner being an agent of the partnership for purposes of the business, and that the act of one partner can bind the partnership. Further, that where the parties to a note contemporaneously execute another written contract, such as a deed of trust, which is connected with the note by direct reference or by necessary implication, the two instruments should be considered together as the entire contract. The court found that the loan provided by AltCap was secured using the Property as collateral through the Deed of Trust executed by Lisa Yeager. The court lifted the temporary restraining order, denied

_____

[2] There is no indication in the record that Appellant responded to Respondent's material facts other than to argue that every issue and argument raised by Respondent was an attempt to distract from the alleged fact that Respondent had no legal basis to foreclose on the Deed of Trust. As such, Respondent's material facts are deemed uncontroverted and admitted. Mo. Sup. Ct. R. 74.04(c)(2).

12

Appellant's request for a permanent injunction, and denied Appellant's Application for Quiet Title.

This appeal follows.

## Standard of Review

Our standard of review in any court-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Schollmeyer v. Schollmeyer*, 393 S.W.3d 120, 122 (Mo. App. 2013). We will affirm the circuit court's judgment unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Id.* at 122-123. We view the evidence and all reasonable inferences in the light most favorable to the court's judgment. *Id.* The party challenging the judgment has the burden of proving error. *Beckham v. Beckham*, 41 S.W.3d 908, 911 (Mo. App. 2001). We apply *de novo* review to questions of law and give no deference to the trial court's conclusions regarding such questions. *Pearson v. Koster*, 367 S.W.3d 36, 43-44 (Mo. banc 2012). "In reviewing a court-tried case, this court's primary concern is with the correctness of the result, not the route taken by the trial court to reach that result." *Blair v. Blair*, 147 S.W.3d 882, 885 (Mo. App. 2004) (internal quotation marks and citations omitted). "The trial judge has absolute discretion as to the credibility of witnesses and the weight of their testimony is a matter for the trial court, and its findings on witness credibility are never reviewable by the appellate court." *Id.* at 886 (internal quotation marks and citation omitted).

13

We preliminarily note that, some of Appellant's arguments are founded on the erroneous premise that the "law of the case" was established when the circuit court ruled on Appellant's request for a temporary restraining order. Appellant cites several findings within the court's temporary order and suggests that these findings are relevant to and/or binding on the court's final judgment. They are not. "Temporary restraining orders and temporary injunctions merely seek to maintain the status quo between the parties and therefore are not final judgments on the merits." *Pomirko v. Sayad*, 693 S.W.2d 323, 324 (Mo. App. 1985).

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.

*Cook v. McElwain*, 432 S.W.3d 286, 292-293 (Mo. App. 2014) (quoting *Univ. of Tex. V. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 S.Ed.2d 175 (1981). Consequently, we review only the circuit court's final judgment which superseded all preliminary orders not otherwise expired or resolved.

## Point I

Appellant contends in its first point on appeal that the circuit court erred in ruling that Appellant and Appellant's partner were parties to a Note that was contemporaneously executed with the Deed of Trust, which related to the Note by direct reference or by

implication, and that the two instruments should be construed together as the entire contract for the loan, because a promissory note was not executed by the grantor of the Deed of Trust. Appellant argues that the Deed of Trust did not secure the $50,000 loan obtained by Mardi Gras for three reasons: 1) Appellant did not execute a promissory note, 2) Mardi Gras' Promissory Note and Appellant's Deed of Trust were not connected by direct reference or necessary implication, and 3) there was "no evidence that the Appellant expressed anything to the Respondents concerning the establishment of an agency between the Appellant and anyone else, for the purpose of taking out a loan."

"A note and mortgage, or deed of trust, given to secure it, both executed at one time, must be construed together." *Richard v. Wells Fargo Bank, N.A.*, 418 S.W.3d 468, 473 (Mo. App. 2013) (internal citations and quotation marks omitted). "By construing these documents together, courts can ascertain the parties' intentions." *Id.* "Contradictions in these documents must be harmonized if reasonably possible." *Id.* "[W]here the parties to a note contemporaneously execute another written contract, such as a deed of trust, which is connected with the note by direct reference or by necessary implication, the two instruments should be considered together as the entire contract." *Federal Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 667 (Mo. App. 2014) (internal quotation marks and citations omitted).

"A joint venture is a species of partnership." *Johnson v. Pacific Intermountain Exp. Co.*, 662 S.W.2d 237, 241 (Mo. banc 1983). "The distinction between a joint venture and a conventional partnership is that the former exists for a particular, defined

15

purpose." *Id.* "There is a mutual agency among the venturers for activities within the scope of the venture, and all have equal right of control." *Id.* "Generally, each partner is at once a principal and an agent of the partnership and the other partners in matters pertaining to the partnership business." *Baker v. McCue-Moyle Development Co.*, 695 S.W.2d 906, 911 (Mo. App. 1984).

We find it clear from the record that Mardi Gras' Promissory Note and Appellant's Deed of Trust were connected by direct reference and necessary implication, that Appellant's and Mardi Gras' joint venture to rehab the Property was expressed to the Respondent, and the fact that the loan was being obtained in pursuit of the joint venture was expressed to the Respondent as well.

Appellant does not dispute that it entered into a joint venture with Mardi Gras for the purpose of rehabilitating the Property. Appellant and Mardi Gras were the only "members" of the Joint Venture Agreement. The January 4, 2018, Joint Venture Agreement expressly states under "Capital Contributions" that Appellant's capital contribution to the venture would be "PROPERTY OWNED BY [APPELLANT] AS COLLATERAL FOR THE [] LENDING PURPOSES." Mardi Gras' capital contribution would be "FINANCIAL LENDING CONTRIBUTION OF THE REHAB/DEVELOPMENT OF [APPELLANT]." Lisa Yeager and Dorothy Estis were "Managers" of the joint venture. Paragraph 10 of the Joint Venture Agreement under "Business Management" states:

16

Within the limits of the Purpose of the Venture and the terms of this Agreement, the Managers, acting jointly, will have full authority to bind the Members in all matters relating to the direction, control and management of the Venture. Conduct and actions of the Managers will be dictated by policy and procedure established by the Members. Authority to bind the Venture in contract or in any third party business relation lies exclusively with the Managers, acting jointly.

The record shows that AltCap was aware of this joint venture when evaluating the loan for approval as Appellant's trial evidence included a January 3, 2018, letter from AltCap wherein AltCap states that it had "received a loan application from [Mardi Gras] who is in partnership with [Appellant]."

Marti Gras entered into the Loan Agreement on March 7, 2018. Collateral for the loan was described as "i) Deed of Trust on the real property which has an address of 1600 E. 19th St, Kansas City, Missouri 64108; and ii) the guarantee of Dorothy L. Estis." Exhibit A to the Loan Agreement, titled "PLEDGE OF PERSONAL PROPERTY AS COLLATERAL SECURITY," was signed by Lisa Yeager. Real property is described therein with a property address of 1600 E. 19th St., Kansas City, MO 64108, along with a legal description of the real estate. No other property is described as being pledged as collateral. The document states that Yeager "hereby deposits and pledges" the Property to AltCap "as collateral security to secure the payment of: Business Loan #180097 issued to Mardi Gras Investment Group Inc on 03/07/2018." The same AltCap representative who signed Mardi Gras' "Loan Agreement" signed the pledge as "Pledgee."

The March 7, 2018, Promissory Note signed by Dorothy Estis for Mardi Gras references Loan Number 180097. The Promissory Note cites "Evidence of Indebtedness"

17

as "a Deed of Trust [] executed the same date as this Note; which Deed of Trust encumbers certain real and personal property, including improvements, located in Jackson County, Missouri."

The March 7, 2018, Deed of Trust signed by Lisa Yeager states that Appellant executed and delivered to AltCap a Promissory Note in the principal amount of $50,000, and the Deed of Trust was given to secure payment of the Note, including "any other indebtedness at any time arising under the Loan Agreement, all of which, together with the Note, is herein called the 'Indebtedness.'"

While Mardi Gras executed the Promissory note, and not Appellant, it is clear when reviewing the record and construing the documents together that Mardi Gras and Appellant held themselves out to AltCap as engaging in the joint venture to renovate the Property, with a necessity for that renovation being acquisition of the AltCap loan. Further, that Mardi Gras' contribution to the joint venture was to obtain the loan through AltCap and be a personal guarantor on that loan, and Appellant's contribution to the joint venture was to provide collateral in the form of a Deed of Trust on the Property so the loan could be obtained. Appellant produced no other March 7, 2018, $50,000 promissory note at trial that Appellant was referencing in the Deed of Trust. Appellant, as Plaintiff, bore the burden of proof and risk of non-persuasion on its Petition for an Injunction to Enjoin Unlawful Foreclosure and for Quiet Title. *Cook*, 432 S.W.3d at 292. Of note, Appellant stated in pre-trial filings in support of a temporary restraining order and preliminary injunction that,

18

> Why the Deed of Trust (prepared by AltCap) was placed in front of Lisa Yeager and signed by her as an officer of the Foundation during the flurry of a rushed closing is an issue to be developed in the trial of this case. It is a long story of inaccurate statements made by AltCap as to what a deed of trust is – securing personal property.

The record gives no indication that an explanation was ever developed at trial, and Appellant never alleged that it was fraudulently induced to sign the Deed of Trust. This statement indicates, nevertheless, that Appellant was actively involved in and present at the closing for the Mardi Gras loan that was being pursued as part of the joint venture.

Appellant cites correspondence between Yeager and AltCap that discusses the Deed of Trust containing an error to argue that AltCap attempted to have the Appellant agree to a modification of the Deed of Trust because it recognized that Appellant had not pledged the property as collateral for the loan. Yet, the record shows that Yeager herself first reached out to AltCap regarding this alleged error, however did not reach out until *after* she signed for the second and final draw of $24,474.20 on the loan.[3] Yeager's June 1, 2018, email to AltCap, with the subject line "Modification to Deed of Trust," begins by stating: "The complete loan I personally and in writing came in to do a right of recession [sic] within the time limit. I also received in writing from your staff that it will be corrected regarding the deeds incorrect wording." The correspondence goes on to demand a correction to the Deed of Trust, stating that Yeager might contact the Missouri

---

[3] Yeager signed for that draw on March 15, 2018. Yeager's April 26, 2018, email to AltCap states that it had been "almost" a month since she first requested the deed be corrected/amended.

19

Attorney General's Office if the matter was not corrected immediately in accordance with the title company's recommendations. AltCap responded that it had previously discussed the matter with Yeager on numerous occasions, that everyone agreed the matter needed to be resolved, and AltCap's legal counsel was working on it. Contact information for AltCap's legal counsel was provided.[4]

On February 19, 2019, AltCap's legal counsel sent Yeager an email advising that it was the intent of the parties that the Promissory Note for the loan to rehabilitate the Property would be signed by Estis and secured by the Property. Further, that after consultation with the title company, a document was prepared to correct the misstatements on the Deed of Trust, and a Reformation of the Deed of Trust was prepared for Appellant to execute. The correspondence states that, "the sole purpose of the document is to correctly set out the intent of AltCap, Estis and the [Appellant] as to this transaction."

Appellant never followed through with obtaining a reformed Deed of Trust despite requesting one, and we disagree that AltCap's attempt to correct the Deed of Trust was an admission that Appellant had not pledged the Property as collateral for the Mardi Gras loan. Notably, Appellant claimed in its correspondence regarding the Deed of Trust that

---

[4] In the light most favorable to the circuit court's Judgment, it can be reasonably inferred that this correspondence is actually evidence of Yeager's personal involvement in the Mardi Gras loan as it discusses a right of rescission regarding a loan in the same email Yeager states that Appellant is "not the borrower" and demands the Deed of Trust be modified. Dorothy Estis is carbon copied on this email.

Appellant was not the named "borrower" under the loan, but never claimed that Appellant did not execute the Deed of Trust and pledge the Property as security for the loan despite not being the named "borrower."

The fact of the matter is that Appellant granted a Deed of Trust for the Property to AltCap to secure a $50,000 Promissory Note. Therein, Appellant attested that Appellant executed and delivered a $50,000 Promissory Note to AltCap. The Deed of Trust was given "to secure payment of any and all … indebtedness represented by the Note, and of any other indebtedness at any time arising under the Loan Agreement, all of which, together with the Note, is herein called the 'Indebtedness.'" Included with the Loan Agreement as "EXHIBIT A" is a "Pledge of Personal Property as Collateral Security," signed by Yeager, wherein she pledges "Property with an Address of 1600 E. 19th St Kansas City, MO 64108 with a legal description of [legal description provided]" as "collateral security to secure the payment of … Business Loan #180097 issued to Mardi Gras Investment Group Inc on 03/07/2018." EXHIBIT A additionally states that, "In the event of default of payment of the debt or breach of this pledge agreement, the Pledgee or holder shall have full rights to foreclose on the pledged collateral and exercise its rights as a secured party."

It can be reasonably inferred that the Deed of Trust is referencing the Loan Agreement signed by Mardi Gras which contains Lisa Yeager's pledge of the Property as collateral for the loan. The Promissory Note signed by Mardi Gras is expressly incorporated into the Loan Agreement, despite not being attached to the Loan Agreement,

as there is no dispute that the March 7, 2018, Promissory Note signed by Mardi Gras is the Promissory Note referenced in the March 7, 2018, Loan Agreement. The March 7, 2018, Deed of Trust expressly states that it is given to secure payment of the "Indebtedness," which includes payment of the Promissory Note, extensions of the Note, and any other indebtedness at any time arising under the Loan Agreement. As the Loan Agreement incorporates the Promissory Note and also contains Lisa Yeager's pledge to secure the Mardi Gras loan with the Property, and the Deed of Trust references both a $50,000 Promissory Note and its corresponding Loan Agreement, the Deed of Trust and Promissory Note are connected by direct reference and/or necessary implication.

Moreover, Appellant's joint venture with Mardi Gras expressly sets forth the arrangement where Mardi Gras would obtain a loan in pursuit of the joint venture and Appellant would contribute the Property as collateral for that loan in pursuit of the joint venture. Appellant's attestation in the Deed of Trust that it granted AltCap the Promissory Note for the loan can, therefore, be reasonably inferred to represent Appellant's acknowledgement that the Property was offered as security in furtherance of the joint venture.

The circuit court did not err in concluding that on March 7, 2018, Appellant granted a Deed of Trust to AltCap securing a promissory note in the principal amount of $50,000, that Appellant's joint venture with Mardi Gras was to renovate the Property, that the Deed of Trust and Promissory Note signed by the joint venturers should be construed

22

together, and that the loan provided by AltCap was secured using the Property as collateral through the Deed of Trust.

Appellant's first point on appeal is denied.

## Point II – Statute of Frauds

In Appellant's second point on appeal, Appellant contends the circuit court erred in ruling that Appellant and her partner were parties to a Note, arguing that the Appellant never executed a promissory note and the lack thereof violates the Statute of Frauds and should have been fatal to Respondent's position at trial. Appellant argues that, "In this matter, the Respondent's interest in the Appellant's land, as collateral, should have been recorded in writing—it was not. The Respondent's knew of this defect but were unable to cure the same."

Pursuant to Missouri's statute of frauds, Section 432.010, RSMo 2016,

No action shall be brought … to charge any person upon any special promise to answer for the debt, default or miscarriage of another person … or upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year, … unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized….

We find several instances in the record where Respondent's interest in Appellant's land, as collateral, was recorded in writing. The Joint Venture Agreement, signed by Appellant, obligated the Property as collateral for the loan that would be obtained in furtherance of the joint venture. That $50,000 loan was obtained by Mardi Gras in

23

furtherance of the joint venture, and the Loan Agreement with AltCap contained a "Pledge" by Appellant's president to deposit and pledge the Property as collateral for the loan. The Pledge states that, in the event of default on the loan, Respondent would have "full rights to foreclose on the pledged collateral and exercise its rights as a secured party." The Deed of Trust given to Respondents by Appellant states that it is to secure fulfillment of a $50,000 promissory note and other indebtedness under the Loan Agreement, and if there was a default in payment of the indebtedness, the Trustee could sell the Mortgaged Property under the terms set forth in the Deed of Trust.

The circuit court did not err in its Judgment as Respondent's interest in the Appellant's land, as collateral, was recorded in writing and any action taken thereon was not in violation of the statute of frauds.

Appellant's second point on appeal is denied.

**Conclusion**

We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.

24